JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent custody of two of her children, T. and T.M., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). We affirm in part and reverse in part.
 {¶ 2} Appellant is the biological mother of T. and T.M., and three other children who are not the subject of this appeal. The children's biological father is not a party to this appeal.
 {¶ 3} In October 2000, four of appellant's children,[1]
including T. and T.M., were placed in the temporary custody of CCDCFS because appellant had left the children with her mother and her whereabouts were allegedly unknown.[2] These cases were later dismissed.
 {¶ 4} In January 2002, CCDCFS filed a complaint for neglect and for disposition of permanent custody of appellant's four children, alleging that appellant had a substance abuse problem, had left her children with inappropriate care givers who had physically and verbally abused them, did not have stable housing, and had moved the children from school to school, causing them to miss numerous days of school. The trial court granted the motion of CCDCFS for predispositional temporary custody of the children.
 {¶ 5} Appellant subsequently stipulated to the complaint, as amended, and dispositional hearings were held in August and October 2003. Sidney Gaskins, appellant's caseworker at CCDCFS from October 2000 through October 2002, testified that a case plan was established for appellant in November 2000. The case plan required appellant to address her issues of substance abuse and emotional instability, complete a parenting education class, obtain employment, and procure stable housing.
 {¶ 6} Gaskins testified that appellant was not committed to completing her case plan and did not believe that she or her family had any issues that required professional intervention. Although appellant was referred several times to various programs for treatment of her substance abuse issues, she did not follow through with treatment. Moreover, as recently as July 2002, while she was pregnant with her fifth child, appellant tested positive for marijuana. Appellant told Gaskins that she did not believe she needed any treatment for substance abuse, however.
 {¶ 7} Appellant did not procure stable housing and from November 2000 through October 2002, lived at six different addresses. Although appellant had several jobs during this time, the longest period of employment was only one month. Appellant told Gaskins that she did not need to work, however, because she received a monthly Social Security check in the amount of $550.
 {¶ 8} Appellant also did not attend any parenting education classes during this time period, although Gaskins made several referrals for her. Appellant told Gaskins that she did not need any parenting education because any issues regarding the children were solely the result of CCDCFS taking the children away from her.
 {¶ 9} Gaskins testified further that appellant was emotionally unstable. On one occasion, appellant threatened Gaskins and her supervisor with physical harm and on other occasions, she would telephone Gaskins repeatedly and curse at her and call her names. After a psychological evaluation in November 2000, appellant was referred for individual counseling, although as of October 2002, when Gaskins left the case, appellant had not participated in any such counseling. Gaskins testified that, like the other case plan recommendations by CCDCFS, appellant felt that she did not need any counseling.
 {¶ 10} Gaskins testified that all of appellant's children had special needs that required intensive intervention. T., born March 19, 1993, was withdrawn and, shortly after he was placed in foster care, began acting out sexually with his brothers. After a psychological evaluation, T. was diagnosed with traumatic stress disorder and referred for individual counseling. Later, after T. threatened to commit suicide and set a bush on fire, he received in-patient psychological counseling for approximately nine months. T.M., born June 25, 1994, had an explosive personality and fought a lot with his brothers. Once, when Gaskins was driving him home after a visit with appellant, T.M. became so angry that he tried to kick out the window of her car. Appellant's other two children had similarly explosive personalities. According to Gaskins, appellant did not believe that her children needed psychological counseling or medication, however. Although T.'s therapist felt that it would be beneficial for appellant to participate in T.'s therapy, appellant attended only one session and then refused to go again. Janna Shelby, the CCDCFS caseworker assigned to appellant's case after Gaskins, testified that appellant finally completed a drug treatment program in April 2003, although she told Shelby that even though she smoked marijuana, it was not a problem for her.
 {¶ 11} Shelby testified further that, as of August 2003, appellant had been living in the same house since June 2002, although it was likely she would have to move again in the near future because the bank had informed appellant that it intended to foreclose on her landlord.
 {¶ 12} Shelby testified further that appellant had successfully completed a parenting education class in September 2002. Her last employment had ended in February 2003, however, and she was still unemployed as of the date of the hearing.
 {¶ 13} Like Gaskins, Shelby was concerned about appellant's emotional stability as it related to her ability to care for her children. According to Shelby, appellant was very volatile and would often alternate in the same telephone conversation between speaking very calmly to yelling and screaming at Shelby. Appellant also made threats to Shelby regarding physical harm to her childrens' foster parents. Appellant finally started going to individual counseling in June 2003 although, according to Shelby, her volatile behavior continued. In one incident, appellant threatened physical harm to a relative who was caring for appellant's youngest child. In another incident, when appellant was told by a social worker that she should not feed her eight-month-old child fried chicken and macaroni and cheese due to the child's medical condition, appellant yelled and screamed and insisted that she would feed her child whatever she wanted.
 {¶ 14} Shelby testified that T.'s suicidal behavior was precipitated by broken promises from appellant and upsetting things appellant said to him. She testified further that T.M. was diagnosed with attention deficit disorder and was often suspended from school for fighting, but his behavior had significantly improved after he began counseling and medication. Appellant told Shelby, however, that T. only had problems because CCDCFS removed him from her care and did not require medication or counseling. Shelby testified that her attempts to get appellant involved with her childrens' daily activities, such as football games or medical appointments, were all unsuccessful. She testified that terminating appellant's parental rights was in the best interest of all of the children.
 {¶ 15} Kenyatta Abboushinte, clinical director of therapy at Beacon Agency, testified that he had been counseling appellant since October 2002, when he began working with T.V. and T.S., appellant's third and fourth children. Abboushinte testified that he diagnosed appellant with bipolar disorder and suggested that she follow up with a physician who could prescribe medication for her, but she never did so. Abboushinte testified, however, that appellant's behavior during her visits with T.V. and T.S. was appropriate, her behavior had stabilized, and there seemed to be a very loving relationship between appellant and these children.
 {¶ 16} Sharon Owens, T.'s therapist since June 2002, testified that T. had traumatic stress disorder and depression. She testified further that T. had developed a good relationship with his foster mother and, although he wanted to maintain some kind of relationship with appellant, he wanted to live with and be adopted by his foster mother, where he felt safe.
 {¶ 17} Tony Cook, a respite care giver at Beacon Agency, testified that he had supervised visitation between T., T.M., the two younger siblings, and appellant every other Wednesday evening since November 2000. Cook observed that appellant had "come a long way" since the visits began. According to Cook, appellant no longer got as upset with CCDCFS workers as she had previously. He testified futher that the relationship between appellant and her two younger children was good, although he observed that T.M. is "up and down. [H]e doesn't know where he wants to be or what he should do."
 {¶ 18} The trial court subsequently entered an order granting permanent custody of T. and T.M. to CCDCFS and legal custody of the two younger children to appellant, with an order of protective supervision to CCDCFS. Appellant appeals from that portion of the order granting permanent custody of T. and T.M. to CCDCFS. She assigns four errors for our review; for clarity, we will discuss these errors out of order.
 i. HEARSAY EVIDENCE {¶ 19} In her first assignment of error, appellant contends that the trial court committed reversible error in admitting hearsay testimony into evidence. Appellant cites several instances of allegedly inadmissible hearsay which she contends "had the possibility" of tainting the trial court's opinion of her and her ability to parent her children.
 {¶ 20} Initially, we note that appellant did not object to any of the
 {¶ 21} instances of alleged inadmissible hearsay in the trial court and, therefore, has waived any objection to the claimed error. Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41,43. In limited circumstances, an appellate court may apply the doctrine of plain error and review an issue otherwise waived. In applying the doctrine of plain error in a civil case, however, "reviewing courts must proceed with the utmost caution, limiting the doctrine to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. We find no such plain error here.
 {¶ 22} Juv.R. 34(B)(2), regarding dispositional hearings, provides that "except as provided in division (I) of this rule,
the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Division (I) of Juv.R. 34 provides that "the Rules of Evidence shall apply in hearings on motions for permanent custody." (Emphasis added).
 {¶ 23} CCDCFS argues that, contrary to appellant's argument, hearsay was admissible at the dispositional hearing regarding appellant's children because CCDCFS filed a complaint for permanent custody in this matter, rather than a motion. As pertains to this case, however, this is a distinction without a difference. Here, the purpose of the hearing was to determine whether to grant permanent custody of the children to CCDCFS; hearsay evidence was therefore inadmissible. Indeed, the record reflects that both appellant's counsel and counsel for CCDCFS objected to hearsay testimony many times during the two days of hearings. Some of these objections were sustained. Thus, it is apparent that counsel and the trial judge all believed, correctly, that because the proceedings involved the possible permanent termination of parental rights, the Rules of Evidence applied to the hearing. See, e.g., In re Swisher, Hamilton App. Nos. 02AP-1408, 02AP-1409, 2003-Ohio-5446 (Rules of Evidence applied in dispositional hearing where Franklin County Children Services filed complaint for permanent custody of dependent child because purpose of hearing was to determine whether to grant permanent custody of the child to the agency).
 {¶ 24} Nevertheless, we find no plain error in the admission of the disputed testimony even if it were hearsay. Where a trial judge acts as the finder of fact, as in this case, a reviewing court should be reluctant to overturn a judgment on the basis of the admission of inadmissible testimony, unless it appears that the trial court actually relied on such testimony in arriving at its judgment, because the trial judge is presumed capable of disregarding improper testimony. In re Sims (1983),13 Ohio App.3d 37, 41; In re M.H., Cuyahoga App. No. 80620, 2002-Ohio-2968, at ¶ 73.
 {¶ 25} Appellant offers no evidence which demonstrates that the trial judge relied on any of the alleged hearsay in arriving at her judgment. Indeed, appellant argues only that the hearsay had the "possibility" of tainting the court's perception of her ability to parent her children; she offers nothing which demonstrates that she was actually prejudiced by the testimony. Likewise, we find no evidence in the record that overcomes the presumption that the judge disregarded any evidence that was not properly before her.
 {¶ 26} Appellant's first assignment of error is therefore overruled. a. "BEST INTEREST" FACTORS
 {¶ 27} In this case, CCDCFS filed an original complaint pursuant to R.C. 2151.27 alleging that appellant's children were neglected and requesting permanent custody as the disposition. In such circumstances, after adjudicating the children neglected, a trial court may grant permanent custody to the agency if it determines, pursuant to R.C. 2151.414(E), that the children cannot be placed with one of their parents within a reasonable time or should not be placed with either parent and, in accordance with R.C. 2151.414(D), that permanent custody is in the best interest of the children. See R.C. 2151.353(A)(4).
 {¶ 28} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-ofhome providers, and any other person who may significantly affect the child; 2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and 5) whether any of the factors in R.C. 2151.414(E)(7) to (11) are applicable.
 {¶ 29} Here, the court determined that T. and T.M. cannot and should not be returned to their parents because of: "1) the length of time T. and T.M. have been placed outside of the home of the mother; 2) the strong bond of T. and T.M. with the foster parents; and 3) the wishes of the children, as expressed directly by the children or through the children's guardian ad litem, with due regard for [the] maturity of the children."
 {¶ 30} The court further found "based upon the evidence presented and the recommendations of the guardian ad litem/attorney for the children and after considering all relevant factors, including but not limited to each of the factors listed at R.C. 2151.414(D)(1)-(5), that an order of permanent custody is in the best interest of T. and T.M. ***."
 {¶ 31} In her third assignment of error, appellant contends that the trial court committed reversible error because it did not discuss on the record each of the factors set forth in R.C.2151.414(D) when reaching its determination concerning the best interest of the children. We disagree.
 {¶ 32} As this court recently stated in In re I.M.,
Cuyahoga App. Nos. 82669 82695, 2003-Ohio-7069, at ¶ 27, "the statute does not require the court to list those factors or conditions it found applicable before making its determination that the child cannot be placed with either parent or that permanent custody is in that child's best interest." It requires only that the trial court consider all relevant factors. Accordingly, the trial court's failure to specifically discuss each of the factors set forth in R.C. 2151.414(D) when rendering its judgment is not reversible error.
 {¶ 33} We agree with appellant, however, that the trial court's failure to consider all of the statutory factors with respect to T.M. before granting permanent custody to CCDCFS is reversible error. As noted earlier, in determining the best interest of the child, the trial court must consider the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child. At the time of the hearings, T.M. was nine years old, capable of expressing his wishes.
 {¶ 34} T.M. did not testify at the hearing, however, nor was he interviewed by the judge in chambers. Moreover, the guardian ad litem did not ever specifically address his wishes. In her letter of recommendation filed with the court prior to the hearings, the guardian ad litem stated:
 {¶ 35} "I have been the Guardian ad Litem for these children since October of 2000. I have met with the children and spoke to them several times. I have interviewed foster mothers, counselors and had discussions with the psychological evaluator. Mother's cooperation with the case plan has been sporadic. The children have special needs, which the mother does not seem to understand Although she has generally complied with the case plan, I do not feel that she has demonstrated appropriate and responsible parenting skills during the pending of this case. The father has not demonstrated a commitment toward the children either.
 {¶ 36} "Based on my observations and investigation, and on the evidence, my recommendation is that granting permanent custody would be in the best interest of these children. I reserve the right to change my recommendation prior to the conclusion of the trial."
 {¶ 37} Subsequently, in her recommendation to the trial judge at the conclusion of the two days of hearings, the guardian ad litem told the judge that she was concerned about appellant's mental health as it related to her ability to parent her children. She then stated:
 {¶ 38} "As far as her relationship with her children, T. has told me that he didn't want to see his mother at one point. He has had an extreme problem after a visit and tried to commit suicide. He wishes to be where he's at. (Emphasis added.)
 {¶ 39} "I think granting permanent custody would be in T.'s best interest. It has taken three years for [appellant] to work on her case plan and she still has yet to complete her mental health assessment or to deal with that. I don't see a real understanding from her.
 {¶ 40} "I'm not sure that I can even make a recommendation of permanent custody for T.V. and T.R., however, I cannot recommend that they be returned to mom at this time."
 {¶ 41} Thus, the record contains no reliable evidence regarding T.M.'s wishes. The guardian ad litem's written report does not include an expression of any of the childrens' wishes and, although the guardian ad litem verbally expressed T.'s wishes to the trial court, she made no mention of T.M.'s wishes.
 {¶ 42} CCDCFS argues, however, that the record indicates that T.M. was unable to formulate a meaningful expression of his wishes and therefore, it was proper for the trial court to glean his wishes from other evidence in the record. Tony Cook, a respite care giver at Beacon Agency testified that T.M. is "up and down. [H]e doesn't know where he wants to be or what he should do." According to CCDCFS, this testimony indicated that T.M. was not competent to express his wishes and, therefore, the trial court could rely on the guardian ad litem's statement that she had met with the children and her recommendation of permanent custody in determining the best interest of T.M. We disagree.
 {¶ 43} The statute requires that the child's wishes be either expressed directly or through the guardian ad litem. Although there may be cases where the trial court cannot ascertain a child's wishes because the child is incapable due to age or incompetency to express them, e.g., In re Wright, Franklin App. No. 04AP-435, 2004-Ohio-4045, at nine years of age, T.M. was arguably capable of expressing his wishes regarding placement. Tony Cook's testimony that T.M. did not know what he wanted is not sufficient evidence to establish that T.M. was not competent to express his wishes. Significantly, there was no evidence from the guardian ad litem — the person responsible for assessing T.M.'s competency to express those wishes — that he was not competent to do so.
 {¶ 44} "It is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997),79 Ohio St.3d 46, 48, citing In re Murray (1990),52 Ohio St.3d 155. Furthermore, "permanent termination of parental rights has been described as the `family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" Inre Hayes, supra at 48, quoting In re Smith (1991),77 Ohio App.3d 1. Here, because there was no evidence regarding T.M.'s wishes for placement presented to the trial court, the court did not consider all of the statutorily required factors in determining whether permanent custody was in T.M.'s best interest. The failure of the trial court to ascertain T.M.'s wishes was reversible error. Appellant's third assignment of error is therefore sustained in part and overruled in part.
 i. INDEPENDENT LEGAL COUNSEL FOR THE CHILDREN {¶ 45} A juvenile has a right to counsel in a proceeding to terminate parental rights, based on the juvenile's status as a party to the proceedings. In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500, at ¶ 17, citing In re Janie M. (1999),131 Ohio App.3d 637, 639. Courts should make a determination, however, on a case by case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child. Williams, supra. Although a guardian ad litem may serve in the dual roles of advocate and guardian, there is a possibility of a "fundamental conflict in a dual-representation situation," because the duty of a guardian ad litem is to "recommend to the court what the guardian feels is in the best interest" of the child, while the duty of a lawyer to a child client is "to provide zealous representation" for the child's position. Id. at ¶ 18.
 {¶ 46} In this case, the trial court appointed both a guardian ad litem and a lawyer for the children. The guardian ad litem filed her letter of recommendation with the trial court on July 1, 2003, in which she recommended that CCDCFS be granted permanent placement of the children. On August 1, 2003, immediately prior to commencement of the first dispositional hearing, the attorney for the children moved to withdraw, and informed the court that there was no conflict between what he and the guardian ad litem were going to recommend. The guardian ad litem agreed that there was no conflict. Counsel for both CCDCFS and appellant indicated they had no objection to the withdrawal.
 {¶ 47} In her second assignment of error, appellant argues that the trial court erred in allowing appointed counsel for the children to withdraw and the guardian ad litem to act in the dual capacity of guardian and advocate for the children.
 {¶ 48} Appellant has waived this issue, however. She did not object in the trial court to the withdrawal of appointed counsel for the children and, in fact, specifically stated that she had no objection to the withdrawal. Errors that arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised for the first time on appeal. Stores Realty Co.,41 Ohio St.2d at 43.
 {¶ 49} Moreover, with respect to T., we find that this is not the extremely rare case which mandates application of the plain error doctrine. As discussed above, T. wished to remain with his foster parents. Thus, even if appointed counsel had represented T. at the dispositional hearing, there would have been no conflict between what counsel would have advocated for him and the recommendation of permanent placement for T. made by the guardian ad litem.
 {¶ 50} We agree with appellant, however, that the trial court committed plain error in not appointing independent counsel for T.M. Because there was no evidence presented to the trial court regarding T.M.'s wishes for placement, it is possible that separately assigned counsel would have advocated differently on behalf of T.M. than the guardian ad litem.
 {¶ 51} CCDCFS asks us to assume that independent counsel was not necessary for T.M. because there was no evidence that his wishes conflicted with the recommendation of the guardian ad litem for permanent placement. As discussed above, however, there is no evidence whatsoever in the record regarding T.M.'s wishes. In the absence of any such evidence, we cannot simply assume that T.M.'s wishes and the recommendation of the guardian ad litem were consistent.
 {¶ 52} Accordingly, on this record, we are constrained to hold that the trial court committed plain error in allowing counsel to withdraw and the guardian ad litem to act in the dual capacity of guardian and advocate for T.M.
 {¶ 53} Appellant's second assignment of error is overruled in part and sustained in part.
 a. MANIFEST WEIGHT OF THE EVIDENCE {¶ 54} In her fourth assignment of error, appellant contends that the trial court erred in determining there was clear and convincing evidence supporting its decision to award permanent custody of T. and T.M. to CCDCFS. Our resolution of appellant's third assignment of error renders this assignment of error moot with respect to T.M. We therefore consider appellant's argument with respect to T. only. A trial court's decision to award permanent custody will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Adoption ofLay (1986), 25 Ohio St.3d 41, 42. Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 55} As pertains to this case, the termination of parental rights regarding a neglected child is governed by R.C.2151.353(A)(4), which provides that the court may commit a child to the permanent custody of a public children services agency if it determines by clear and convincing evidence,[3] in accordance with R.C. 2151.414(E), that the child cannot or should not be placed with either parent in a reasonable time, and that pursuant to R.C. 2151.414(D), permanent custody is in the best interest of the child.
 {¶ 56} R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot or should not be placed with either parent within a reasonable period, including any factor the court considers relevant. Here, the trial court determined that T. cannot or should not be returned to either parent because he had been outside of her home for nearly three years, had developed a strong bond with his foster parents, and wished to remain with his foster parents. The record more than adequately supports these findings. As of the date of the hearing, T. had been away from appellant's home for nearly three years. Sharon Owens, T.'s therapist, testified that she had been treating T. for over one year and that he had developed a good relationship with his foster parents and wanted to continue living with them. Similarly, the guardian ad litem informed the judge that T. wished to remain with his foster parents.
 {¶ 57} Having determined that T. should not be placed with appellant, the trial court then considered whether permanent custody was in his best interest. The best interest determination requires the judge to consider all relevant factors, including, but not limited to: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-ofhome providers; 2) the wishes of the child; 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and 5) whether any of the factors in R.C.2151.414(E)(7) to (11) are applicable.
 {¶ 58} Only one of these factors need be resolved in favor of the award of permanent custody. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing In re Shaeffer Children (1993),85 Ohio App.3d 683. If the court finds that both R.C. 2151.414(D) and (E) have been satisfied, then it may grant permanent custody of the child to a public children services agency. Moore,
supra, citing In re Shanequa H. (1996), 109 Ohio App.3d 142,146.
 {¶ 59} Our review of the record indicates there was clear and convincing evidence to support the trial court's judgment determining that a grant of permanent custody to CCDCFS was in T.'s best interest. While evidence at trial indicated that T. loved appellant, the evidence also indicated that he loved his foster parents, had a good relationship with them, and wanted to stay with them. Other evidence demonstrated that appellant still did not have stable housing or employment, and planned on providing for her children with only a monthly check in the amount of $550 from Social Security. The evidence also indicated that, despite numerous attempts by CCDCFS to help appellant understand both her and T.'s psychological issues, appellant did not accept either her or T.'s need for ongoing psychological treatment and medication to treat those mental health issues. Although she was diagnosed with bipolar disease and advised to consult with a physician who could prescribe medication for her, appellant did not do so. Furthermore, despite T.'s documented need for therapy, appellant stated that she would not continue counseling for her children if they were returned to her. She also refused to participate in T.'s therapy sessions, even though she was advised that her presence would be helpful. The evidence indicated, however, that T.'s foster parents were committed to providing him with a stable, nurturing environment consistent with his needs, with a strong likelihood of adoption.
 {¶ 60} The record establishes that T. cannot be placed with either parent within a reasonable time and that permanent placement was in his best interests. Accordingly, appellant's fourth assignment of error is overruled.
Affirmed in part; reversed in part.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant and appellee share costs equally.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and, Sweeney, J., concur.
[1] Appellant's fifth child was born in the Fall of 2002 and was never involved in this case.
[2] Appellant had been referred to CCDCFS on at least four prior occasions regarding allegations of neglect and abuse of her children.
[3] Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of evidence' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Lansdowne v. Beacon JournalPublishing Co. (1987), 32 Ohio St.3d 176, 180-181.