JOURNAL ENTRY AND OPINION
{¶ 1} D.J.,[1] the father, appeals the decision of the trial court granting permanent custody of his four children to the Cuyahoga County Department of Children and Family Services (CCDCFS). Father argues that the trial court abused its discretion in finding that the children could not be placed with either parent within a reasonable time, and that the children should not be placed with either parent. For the following reasons, we reverse.
 {¶ 2} The family's involvement with CCDCFS began on November 19, 1998, with the birth of the couple's youngest child, B.J. While in the hospital, the mother confided to a hospital worker that her husband, the father, physically abused her. Hospital staff gave mother the option of having the children removed, or leaving father and taking the children to a domestic violence shelter. Mother refused to leave father, and all four children were removed from the home.
 {¶ 3} The children spent the next eighteen months together in an agency foster home. During that time, mother began using drugs and ultimately served time in jail for possession of drugs and prostitution. By May 2000, mother and father no longer resided together and the four children were returned to the custody of the father.
 {¶ 4} The father resumed his use of drugs, forcing CCDCFS to remove the children for a second time in July 2001. For the next thirteen months, the children resided in the same foster home in which they had previously resided. In August 2002, father again regained custody of the children but with the condition of protective supervision.
 {¶ 5} From August 2002 to January 2003, CCDCFS subjected father to random drug testing, and from November 19, 2002 to January 13, 2003, placed family preservation in the home. Family preservation worker Carol Hofstetter (Hofstetter) testified at the permanent custody hearing about her concerns regarding the father's parenting abilities. She reported that over an eight-week period, the family made some progress but that she had two major concerns regarding father's parenting abilities: (1) he was using drugs again, and (2) he seemed overwhelmed with parenting responsibilities. When family preservation ended in January 2003, Hofstetter recommended the following: counseling for the eldest child, S.J., continued drug and alcohol treatment for the father, and continued involvement on the part of CCDCFS.
 {¶ 6} On January 28, 2003,[2] the children were unable to wake their father and called father's sponsor for help. The sponsor was also unable to wake the father and called 911. Paramedics transported father to the emergency room, where a hospital toxicology report confirmed that father had been using marijuana as well as other drugs. Father later claimed that the drugs found in his system were prescription. Because of the father's history of drug abuse, CCDCFS removed the children from his home for a third and final time.
 {¶ 7} On January 29, 2003, CCDCFS filed a complaint alleging neglect and seeking permanent custody of the four minor children. CCDCFS also filed a motion for emergency custody of the children, which was granted on January 31, 2003. CCDCFS filed a case plan on February 28, 2003, and also moved for determination that reasonable efforts were not required.
 {¶ 8} At the adjudicatory hearing on April 9, 2003, the court granted the motion citing father's history of rejecting substance abuse treatment. Additionally, both the mother and father admitted to the amended complaint of neglect. Significant among those admissions were the following:
"1. * * * the children have been removed twice before for drugabuse issues * * *.
 2. Father has a drug abuse problem, specifically alcohol and otherprescription drugs, which prevents him from providing adequate care forthe children. On January 19, 2003, the children called 911 because theycould not wake their father.
 3. Father lacks the appropriate parenting skills due to his drugabuse.
 4. Father, due to his drug abuse, has failed to provide the necessarycare, protection, safety, supervision and parentage that children of suchtender years require.
 5. Mother has a mental health condition; mother was diagnosed withbi-polar disorder in 2001.
 6. Mother has a substance abuse problem, to wit, cocaine. Mother hasbeen convicted for possession of drugs."
 {¶ 9} The trial court found the children to be neglected based on these admissions and set the case for trial.
 {¶ 10} Prior to trial, CCDCFS placed the children in the home of the maternal grandmother, K.H., who expressed a desire to adopt the children if permanent custody was granted. A short time later, however, she asked CCDCFS to remove the children because her marriage broke up and she was unable to handle the children on her own. CCDCFS returned the children to the same foster home where they had resided during the previous two removals.
 {¶ 11} The children were placed in a new foster home in the fall of 2003, after allegations of abuse arose concerning the original foster mother and B.J., the youngest child. The new foster parents have expressed an interest in adopting all four children.
 {¶ 12} At the time of the permanent custody trial, all four children had been in the custody of the CCDCFS on and off for a total of forty-one months since 1998. Additionally, the youngest child, B.J., had spent more than two-thirds of his life in the custody of CCDCFS, and none of his life in the care and custody of his mother.
 {¶ 13} This case went to trial on February 2, 2004, and concluded on February 4, 2004. A visiting judge heard the matter and issued a decision granting permanent custody of the children to the CCDCFS. Though the clerk of courts journalized the decision on February 23, 2004, the judge signed the journal entry on February 2, 2004, after only the first day of trial. Only the father appeals this decision, raising the two assignments of error contained in the appendix to this opinion.
 {¶ 14} The standard of review for permanent custody determinations is well established in Ohio as abuse of discretion. In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124, at 6-7. While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. at 74, citing Trickey v.Trickey (1952), 158 Ohio St. 9, 13.
 {¶ 15} The reviewing court should be guided by the presumption that the trial court's findings were correct. See Seasons Coal Co v.Cleveland (1984), 10 Ohio St.3d 77, 80. Therefore, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion. Dailey v. Dailey (1945),146 Ohio St. 93. This reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. Blakemore, v. Blakemore, (1983),5 Ohio St.3d 217, 219.
 {¶ 16} A showing of abuse of discretion has been met in this case. In the body of the appeal, father claims error in the court's signing of the proposed journal entry granting permanent custody to CCDCFS two days prior to the conclusion of trial.
 {¶ 17} It is a fundamental principle of law that the trial court speaks through its journal entry. City of Lakewood v. Sullivan (May 2, 2002) Cuyahoga App. No. 79382, 2002-Ohio-2134. Applying that fundamental principle to this case, the journal entry granting permanent custody to CCDCFS was signed into law after the first day of trial. Though most likely a clerical error, this is still an unreasonable act on the part of the trial court. Accordingly, we must reverse and remand this case back to the trial court where the court may, on its own initiative, or on the motion of any party, correct the mistake pursuant to Civ.R. 60(A).
 {¶ 18} Furthermore, though not objected to by either party, this court finds plain error in the journal entry transferring the case to the docket of the visiting judge signed by a magistrate on February 3, 2003.State v. Barnes (2002), 94 Ohio St.3d 21, 2002-Ohio-68. Pursuant to Juv.R. 40 and Juv.R. 9, a magistrate is not empowered to refer cases to a visiting judge. Additionally, there is no notice of judicial approval by the sitting judge assigned this case.
 {¶ 19} For the abovementioned reasons, this court reverses the decision of the trial court and remands this case for proceedings consistent with this opinion.
Appendix A:
 Assignments of Error:
 "I. The trial court abused its discretion when it held that thechildren could not be placed with either parent within a reasonableperiod of time.
 II. The trial court abused its discretion when it held that thechildren should not be placed with either parent."
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas — Juvenile Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Corrigan, J., concur.
[1] This court protects the identity of all parties in Juvenile Court cases.
[2] Although the journal entry states that this occurred on January 18 and January 25, 2003, at trial, the witnesses consistently testified that January 28, 2003, was the date of this incident.