JOURNAL ENTRY AND OPINION
{¶ 1} In this permanent custody case, the father of two boys ("the toddler" and "the infant") appeals the trial court's granting permanent custody of his two sons to the county. He also appeals the trial court's denial of his motion for legal custody of two other boys ("the nine-year-old" and "the seven-year-old"), who are sons of the mother of his two children. The mother is not a party to this appeal.
 {¶ 2} The history of this case is a little confusing. The mother had four sons with the man who is the father of the nine-year-old and the seven-year-old. The father of these four boys is not a party to this appeal. These four boys were removed from the mother's home in late September 2000; two of them were placed in permanent county custody[1]
but are not the subject of this appeal. The two who are the subject of this appeal, the nine-year-old and the seven-year-old, were maintained in temporary custody in an attempt to reunite them with their mother.
 {¶ 3} Shortly after the mother lost custody of her four sons in 2000, the father in this appeal was released from prison, where he served nineteen years for the rape of an adult. He and the mother entered into a romantic relationship, from which the toddler was born in November 2002. The toddler was immediately taken into county custody because the mother had tested positive for marijuana while she was pregnant with him. The father's younger son, the infant, was born in April 2004 and also was immediately taken into county custody.
 {¶ 4} Both parents admitted to the toddler's and infant's dependency at the adjudication hearing. Further, they admitted that after completing outpatient treatment for marijuana, the mother refused to be tested for marijuana use; that the mother had been diagnosed with bipolar disorder; that the mother had failed to benefit from the services provided by the county; and that the father had been convicted of rape, assault, and driving under the influence.
 {¶ 5} After the toddler had been placed in temporary county custody, the county provided the father with a case plan, which initially required only that he take parenting classes. Before the father completed the required parenting classes, the case plan was amended to include a requirement that he obtain adequate housing. After the father had completed the parenting classes, but before he had completed the housing requirement, he was convicted of assault and DUI. He failed to inform the social worker of the DUI until four or five months after the conviction. His case plan was then amended to include a requirement that he receive a substance abuse assessment, which he failed to obtain. He finally underwent the assessment but refused to participate in the intensive outpatient program, which was required following the assessment. After ninety days, that assessment expired and he was required to undergo another assessment. Following the second evaluation, he again was required to attend an intensive outpatient program, as well as a psychological assessment because of a significant discrepency between the results of the first and second substance abuse evaluation.
 {¶ 6} The father underwent the psychological assessment[2] and finally began substance abuse treatment, which was ongoing at the time of the permanent custody hearing, nine months after he was initially referred for the substance abuse assessment.
 {¶ 7} Following an extensive hearing, the trial court granted permanent custody of all four children to the county. Although both the mother and the father filed pro se notices of appeal, only the father followed through with his appeal. He is represented by the same court-appointed counsel who represented him at the permanent custody hearing. He states five assignments of error. The first three assignments of error address only the custody of the father's biological children: the toddler and the infant. Because the first and second assignments of error address the same issue, they will be discussed together. They state as follows:
I. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO PROVIDE REASONABLE CASE PLANNING AND FAILED TO EXERCISE DILIGENT EFFORTS TO ASSIST THE PARENTS FOR REUNIFICATION.
II. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES FAILED TO ESTABLISH THAT [THE FATHER] FAILED TO SUBSTANTIALLY REMEDY THE CONDITION THAT CAUSED THE REMOVAL OF THE CHILDREN.
 {¶ 8} The father argues that the county failed to exercise diligent efforts to reunite the family, in part because it failed to provide reasonable case plans for him to follow. The statute governing permanent custody states in pertinent part:
(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
(1)Following the placement of the child outside the child's home andnotwithstanding reasonable case planning and diligent efforts by theagency to assist the parents to remedy the problems that initially causedthe child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric,psychological, and other social and rehabilitative services and materialresources that were made available to the parents for the purpose ofchanging parental conduct to allow them to resume and maintain parentalduties.
R.C. 2151.14(E)(1), emphasis added. The county has a duty, therefore, to assist the parents in remedying any problems which caused them to lose temporary custody. On the other hand, the parents also have a duty to make use of the services to which the county refers them, in order to rectify the problems causing the removal of the children from the home.
 {¶ 9} The father's case plan initially required him only to complete a parenting class and obtain adequate housing, but by the time he had completed the class, not only had he failed to obtain adequate housing, he also had been convicted of assaulting a pregnant woman and of a DUI. The county, therefore, added a requirement that he obtain a substance abuse assessment and complete any recommendations resulting from that assessment. The substance abuse evaluations resulted in recommendations that the father participate in an intensive outpatient program and that he receive a psychological evaluation. The psychological evaluation, in turn, resulted in a recommendation for counseling.
 {¶ 10} The trial court's entries for the toddler and the infant were identical. In its judgment entries awarding custody to the county, the court's stated reasons relating to the father were:
Following placement of the child outside the home, Father has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home;
Father has demonstrated an unwillingness to provide an adequate permanent home for the child by his actions * * *
Judgment entry at 2.[3]
 {¶ 11} The father notes that he was not given custody of the toddler when the toddler was born in 2002 because the county needed, first, to investigate his criminal background, and, second, to review his housing to ascertain whether it was adequate for the child. He was instructed to complete a parenting program in preparation for placement of the toddler with him. The father completed the parenting program in June 2003 but delayed arranging with the social worker for a home visit to ascertain the appropriateness of his home for the child. The social worker testified that she required that he obtain housing separate and apart from the mother, who was in the process of a permanent custody hearing for her two oldest children. The social worker stated that although at the beginning of the county's temporary custody of the toddler the father claimed to have appropriate housing,"[h]e never called me up to set up an appointment for" her to inspect the home. Tr. at 90.
 {¶ 12} He also told the social worker that he was looking for a new place to live because he had been living with his mother. The social worker testified that the father eventually asked her to inspect a home on Superior Avenue, which she found to be adequate. She provided him with a voucher for a security deposit, but he never moved into that home. The social worker further stated she believed that he was actually, at that time, living with the children's mother. She noted that the address he provided to his probation officer was that of the children's mother, not his own mother's address.
 {¶ 13} Finally, the summer before the permanent custody hearing in 2004, the father obtained an apartment, which the social worker inspected and deemed adequate housing for him, the toddler, and the infant. At that point, however, he had not completed his case plan concerning his substance abuse.
 {¶ 14} At the time of the permanent custody hearing, the toddler was two years old, and the father still had not completed his case plan. As the court noted, it was the father's repeated failure to comply with the case plan that caused permanent custody of the toddler and the infant to be awarded to the county. As the county noted in its appellate brief, "[a]s a result of appellant's lack of cooperation, combined with his failure to timely disclose his problem and his failure to timely participate in corrective action, he had failed to resolve his substance abuse issue as of the conclusion of trial." At 4.
 {¶ 15} More importantly, the father had failed to comply with the requirement that he receive psychological counseling. He testified that he did not feel this counseling was necessary, although he would agree to it if the case plan required it. He had not, however, made any efforts to comply with the requirement as of the time of the permanent custody hearing. The report in which the psychologist recommended further counseling was dated August 18, 2004. The permanent custody hearing occurred on October 5, 2004. Despite the addition of this requirement to the case plan and the imminent permanent custody hearing, the father had failed to initiate the required counseling.
 {¶ 16} The statute requires that children be able to be reunited with their parents within a reasonable period of time.
R.C. 2151.414(B)(1)(d) permits a trial court to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that the child has been in the temporary custody ofthe agency for twelve or more months of a consecutive twenty-two monthperiod ending on or after March 18, 1999. The court need not find that the child cannot or should not be placed with either parent within a reasonable time. * * * Such a finding is implicit in the time frame established by the statute.
In re Large, Hocking App. Nos. 03CA9, 03CA10, 2003-Ohio-5275, ¶ 12, emphasis added, internal citations omitted.
 {¶ 17} The toddler was two years old at the time of the permanent custody hearing. He had spent his entire life in county custody. His placement in county custody for more than eighteen months of his two-year life span automatically resulted in a finding that he cannot or should not be placed with either parent. Even without considering the father's lack of compliance with the case plan, therefore, the court could proceed directly to the best interest analysis.
 {¶ 18} We conclude, therefore, that the trial court did not err in finding that the county had established an adequate case plan and that the father had failed to comply with the case plan. Accordingly, these assignments of error are overruled.
 {¶ 19} The father's third assignment of error states:
III. THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF THE FATHER'S SONS] WAS CONTRARY TO THE BEST INTEREST OF THE CHILDREN AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 20} R.C. 2151.414 allows a court to grant permanent custody of a child to the county if it determines at a dispositional hearing, by clear and convincing evidence, first, that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, and, second, that permanent custody is in the best interest of the child. Clear and convincing is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Awkal (1994), 95 Ohio App.3d 309, fn. 2, citing Lansdowne v. Beacon Journal Publishing Co. (1987),32 Ohio St.3d 176, 180-181, citing Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 21} In reviewing a trial court's decision in a permanent custody matter, the appellate court affords great deference to the trial court's decision. The trial court is present to observe the parties and gains knowledge which cannot be conveyed in the written record. Trickey v.Trickey (1952), 158 Ohio St. 9, 13. Unless the trial court abused its discretion, therefore, the appellate court will not overturn its decision. An abuse of discretion requires an arbitrary, capricious, or unreasonable decision. In re Awkal, supra; Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 22} The trial court's determination of whether the child can or cannot be placed with either parent within a reasonable period of time or should not be placed with either parent is guided by R.C. 2151.414(E). That section states sixteen factors the court may consider in its determination. It provides that, if the trial court finds by clear and convincing evidence that any of the sixteen provisions exist, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time.
(B) (1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
* * *
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 23} The toddler had been in county custody for his entire, two-year life. Because subsection (B)(1)(d) applies to him, the court needed to consider only whether permanent custody was in his best interest. The infant, on the other hand, had been alive for only five and a half months at the time of the permanent custody hearing. He could not, therefore, qualify under this section of the law.
 {¶ 24} Nonetheless, if the county proved that the infant could not be placed with the father within a reasonable period of time or should not be placed with him, then the court would move on to the best interest question. In determining whether a child can be placed with his parents within a reasonable period of time, the court evaluates the case according to the requirements of subsection (E) of the statute. The following part of subsection (E) specifically applies in the case at bar:
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
R.C. 2151.414(E)(4).
 {¶ 25} In the two years following the drafting of his case plan, the father's criminal actions resulted in additional requirements in the case plan, of which he satisfied only two: a parenting class and, after a year and a half, housing. The father's failure to understand the danger the children's mother posed to them, along with his continuing relationship with her, demonstrates that permanent custody for the infant is in the child's best interest.
Finally, the child does not first have to be put into a particular environment before a court can determine that that environment is unhealthy or unsafe. In re Campbell, supra (13 Ohio App.3d), at 36, 13 OBR at 38-39, 468 N.E.2d at 96; In re Turner, supra. The unfitness of a parent, guardian or custodian can be predicted by past history.
`* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent, guardian, or custodian] an opportunity to prove her suitability.'"
In re Burchfield (1988), 51 Ohio App.3d 148,156, quoting In re Bishop
(1987), 36 Ohio App.3d 123, quoting In re East (32 Ohio Misc.).
 {¶ 26} The father exhibited reluctance to comply with all portions of the case plan except for the parenting classes. His lack of cooperation was the cause of the uncompleted portions of the case plan at the time of the permanent custody hearing.
 {¶ 27} Most telling, however, is the father's lack of honesty concerning his relationship with the mother. He testified that he was aware that he had to maintain housing separate from her if he were to obtain custody. Nonetheless, he both told the psychologist and testified that he considered her a good mother and believed that she had good parenting skills. He also denied that the mother had a mental illness or any emotional problems, despite the fact that she repeatedly threatened to kill the social worker and had been shown on tape threatening a police officer after her arrest for assaulting a pregnant woman. The social worker opined that the father could not maintain a stable home for the children as long as he had contact with the mother.
 {¶ 28} The county expressed concern that the father would continue to live with the mother if he gained custody of the children. Her presence, because of her bipolar disorder and emotional instability together with her consistent marijuana use, was deemed detrimental to the children's well-being. The father testified that he had lived with the mother for only a few months while he was on house arrest. His probation reports, as well as other court documents, reflect that his address was the same as the mother's for the majority of the time the case plan was in effect. Additionally, despite the father's stated understanding that the case plan required him to live separately from the mother, as recently as the month before the hearing, the foster mother had seen the mother's belongings at the father's apartment. The father had failed, therefore, to provide an adequate permanent home for the children.
 {¶ 29} Once the court has found that the children could not or should not be placed with the parents, as demonstrated by the parents' failure to provide an adequate permanent home for them, the court must then determine whether permanent custody is in the best interest of the children. "Best interest" is determined by examining the factors found in R.C. 2151.414(D):
(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 30} Addressing the first factor, we note that, although the toddler and the infant had a bond with the father, the social worker and the guardian ad litem both stated that the two younger children had also bonded with their foster mother, who was the only mother they had known and who had lived with them from their birth. The children were too young to express their wishes, so the second factor is not a consideration. The third factor, the custodial history of the children, weighs in favor of permanent custody because both children have been in county custody since birth. The fourth factor also weighs in favor of permanent custody. The foster mother has expressed a desire to adopt both the toddler and the infant. This adoption would provide them with a legally secure permanent placement. None of the factors in subsection (5) apply in this case.
 {¶ 31} "This court has found that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody." In reS.B., Cuyahoga App. No. 85560, 2005-Ohio-3163, ¶ 13. Because three factors are resolved in favor of permanent custody, the trial court did not err in awarding permanent custody to the county. Accordingly, this assignment of error is overruled.
 {¶ 32} For his fourth assignment of error, the father states:
IV. THE TRIAL COURT'S DECISION DENYING [THE FATHER]'S MOTION FOR LEGAL CUSTODY OF [MOTHER'S NINE-YEAR-OLD AND SEVEN-YEAR-OLD] WAS CONTRARY TO THE BEST INTERESTS OF THE CHILDREN AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 33} The father claims the trial court erred when it denied his request for legal custody of the mother's two boys, the nine-year-old and the seven-year-old. Because the father is not the father of the nine-year-old or the seven-year-old, his only standing to appeal is as "any other person * * * requesting legal custody." He fails, however, to cite to any law to support his claim. App.R. 16(A)(7)[4] requires the father's brief to contain "[a]n argument containing the contentions of the father with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to theauthorities, statutes, and parts of the record on which the father relies." Id. Emphasis added. When an appellant fails to comply with the requirements of App.R. 16(A)(7), "[p]ursuant to App.R. 12(A), an appellate court may overrule or disregard an assignment of error for `lack of briefing' on that assignment." In re Harris (Aug. 2, 2001), Cuyahoga App. No. 78022, Ohio App. LEXIS 3391, at *9, citations omitted.
 {¶ 34} Furthermore, even if the father had properly argued this assignment of error, we cannot say the trial court abused its discretion in denying his motion for legal custody and instead granting permanent custody to the county. It is required to find only that the natural parents are not suitable. The court made this finding when it permanently removed the children from the mother's custody. The court is not required to find that a nonparent is unsuitable to take custody before it awards permanent custody to the county. In Re Robinson, Summit App. No 20826, 2002-Ohio-1504, 2002 Ohio App. LEXIS 1513, at *8-9. R.C. 2151.353(A) provides several options to the court, among which are the following:
(3) Award legal custody of the child to either parent or to any otherperson who, prior to the dispositional hearing, files a motion requestinglegal custody of the child;
(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding. (Emphasis added.)
 {¶ 35} We find nothing in the record to indicate the court abused its discretion in awarding custody to the county and not to the father.
 {¶ 36} Accordingly, this assignment of error lacks merit.
 {¶ 37} For his fifth assignment of error, the father challenges the authority of the judge who held the permanent custody hearing:
V. THE TRIAL COURT WAS WITHOUT LEGAL AUTHORITY TO HEAR ALL MATTERS ASSIGNED TO IT BY A MAGISTRATE.
 {¶ 38} The father questions the authority of the judge who heard the case, because the juvenile court judge had not officially signed the order transferring the case to a visiting judge. Rather, the order was signed by the magistrate. The father cites a recent case from this court, In re: S.J., Cuyahoga App. No. 84410, 2005-Ohio-1854, in which the court found plain error when the case was heard by a visiting judge who had not been assigned by the sitting judge, but rather by the magistrate on the case.
 {¶ 39} Several factors differentiate this case from In re: S.J..
First, the father in the case at bar waived his right to appeal this issue when he and all the parties expressly agreed to have the case heard by a visiting judge and signed a form stating so. Second, as we held in an earlier Eighth Appellate District case, it has long been the rule that any challenge to a judge's authority must be raised at the time the judge is hearing the case. Huffman v. Shaffer, (1984), 13 Ohio App.3d 291,292.[5] Here, the father raised no such challenge at the trial level.
 {¶ 40} In a recent case with a similar situation, the Eighth Appellate District observed:
The record does not reflect any motion, oral or written, objecting to the authority of the judge hearing the case. Further, the appropriate means for objecting to the authority of an assigned judge is through a motion for mandamus and prohibition. The Ohio Supreme Court has held that a judge's right to hear a case cannot be questioned in a collateral proceeding where the judge is not a party to that proceeding. The Court specifically ruled that an appeal from an adverse ruling constituted a collateral proceeding if the appeal challenged the authority of the judge who heard the case. * * * The [appellant] may not, therefore, "appeal from an adverse judgment rendered in the underlying action" by questioning the authority of the appointed judge. * * * Instead, "until a de facto officer is properly challenged in a quo warranto proceeding and thereby removed from office, his actions are as valid as those of a de jure officer."
Seaford v. Norfolk S. Ry. Co., (2004), 159 Ohio App.3d 374,2004-Ohio-6849, ¶ 17, internal citations omitted; reversed on other grounds, 106 Ohio St. 3d 430, 2005-Ohio-5407, 2005 Ohio LEXIS 2387 (2005). See also, State v. McGonnell, Cuyahoga App. No. 85058,2005-Ohio-3157, which holds that
"* * * when the record indicates the original judge is unavailable, any party objecting to the reassignment must raise that objection at the first opportunity; otherwise, any claim of error is waived. State v. Brown (May 27, 1993), Cuyahoga App. Nos. 62725-62727, 1993 Ohio App. LEXIS 2673, citing State v. Pecina (1992), 76 Ohio App.3d 775 at 778, 603 N.E.2d 363.
Id. ¶ 20.
 {¶ 41} In another case, this court held that, when a judge who adjudicates a case which was not properly transferred to him lacks the actual authority to rule on the case, that judge's rulings are voidable if a timely objection is raised. Absent a timely objection to the judge's authority over the case, however, any objection is waived. Dorsky v.Dorsky (Dec. 10, 1981), Cuyahoga App. No. 43587, 1981 Ohio App. LEXIS 14072, at *8-9. In the case at bar, the father failed to timely raise any objection to the appointment of the visiting judge by the magistrate. Rather, he waited until the court's decision was adverse to him and then questioned the authority of the court.
 {¶ 42} We agree with the analysis of the Twelfth Appellate District inWilliams v. Banner Buick, Inc. (1989), 60 Ohio App. 3d 128, 134 when it said: "Clearly, the decision by the [appellants] to proceed without challenge or objection concerning the appointment of [the visiting judge] renders any possible error waived. In addition, the acting judge, by having `colorable' authority, is deemed a de facto judge with all the power and authority of a proper de jure judge. Consequently, actions taken by [the visiting judge] are legally valid and binding." Id.
 {¶ 43} "A delegation of judicial authority under color of right may allow the person to whom the judicial authority is transferred to act as a de facto judge, even if the delegation of authority is defective."Cangemi v. Cangemi, Cuyahoga App. No. 84678, 2005-Ohio-772 ¶ 25. It is long-standing law that "as much as we deprecate the irregular way in which the substitute for the regularly elected judge assumed the functions of the judge in this case, the record shows some color of title to appointment as substitute, and he was a de facto acting * * * judge, and the judgment, if any, entered by him, is not now open to attack on that ground." Demereaux v. State (1930), 35 Ohio App. 418, 422. Because the father failed to object to the appointment of the visiting judge prior to his appeal, he cannot now complain about the manner in which that judge was appointed.[6]
 {¶ 44} Because the father did not object to the judge's authority to hear the case at the trial level, and he has failed to follow the proper channels for objecting in this court, this assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., Concurs.
 Blackmon, A.J., Dissents without opinion.
[1] This court reversed the permanent custody award of one of the two older boys because the boy's preferences regarding custody had not been considered by the court. It sustained permanent custody for the other older boy. See In re: T.M. III, Cuyahoga App. No. 83933, 2004-Ohio-5222.
[2] Although this assessment was admitted into evidence, it is not with the transcript or in the files of the cases. The examining psychologist testified at the hearing, however, and we will rely on her testimony regarding the assessment.
[3] The father also argues concerning the mother's case plan, but because she is not a party to the appeal, we will not address these arguments.
[4] The father refers three times to the record, but fails to cite the page in the transcript, which consists of 1,000 pages.
[5] In Bishop, supra at 292, this court held that it is well settled that when the record demonstrates some color of title to the substitute judge through his appointment, and when the judge acted as a de facto judge, a judgment entered by that acting judge is not open to attack on the grounds of his allegedly improper appointment.
[6] Further, a reading of Juv.R. 40 shows that this court's prior holding in In re: S.J. may be in error; a magistrate has significant powers as delegated by the judge. The rule states in pertinent part:
Subject to the specifications stated in the order of reference, themagistrate shall regulate all proceedings in every hearing as if by thecourt and do all acts and take all measures necessary or proper for the efficient performance of the magistrate's duties under the order.
Juv.R. 40(C)(2) emphasis added. Transferring the case to a visiting judge with the consent of the parties is an act which the trial court could properly perform.