JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Tawanda Wring ("appellant"), mother of minor child, I.J., appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court. I. {¶ 2} According to the case, on May 13, 2005, Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint alleging that I.J. was a neglected child. CCDCFS was granted emergency custody following a hearing on May 16, 2005. For purposes of the adjudicatory hearing, appellant was served with a summons and a complaint, and was subsequently served by ordinary mail with notice of the hearing, while proof of publication was returned for service on any possible father. On December 20, 2005, the trial court held the adjudicatory hearing. Based upon the testimony presented and the admissions of the parties to the amended complaint, the trial court found the allegations to be true and adjudicated the child to be a dependent child. Said matter was continued for dispositional hearing to address CCDCFS' request of permanent custody. {¶ 3} On February 16, 2006, this matter came on for dispositional hearing on CCDCFS' request for permanent custody. After a hearing on February 16, 2006, the trial court granted permanent custody of I.J. to CCDCFS by an entry dated March 3, 2006. Appellant perfected her appeal of that order on March 15, 2006.
 {¶ 4} According to the facts, this matter originated with the filing of a complaint alleging neglect and requesting a disposition of permanent custody. Appellant has had a drug problem since at least 1998, and has previously had her parental rights terminated with regard to four other children as a result of her drug abuse and other related issues.
 {¶ 5} The child tested positive for cocaine at birth and was subsequently taken into agency custody immediately upon release from the hospital. Upon removal, the child was placed in the care of interested individuals Jerome and Jatana Robinson. Related court proceedings were resolved when I.J. was adjudicated abused and neglected and was placed in the legal custody of Jerome and Jatana Robinson. This custodial relationship lasted for approximately two years, at which time CCDCFS was notified that the Robinsons were no longer able to provide care for I.J.
 {¶ 6} A subsequent investigation revealed appellant was still not prepared to provide adequate care for I.J., because she continued to abuse drugs and recently tested positive for marijuana and cocaine. Appellant has been unemployed and has lacked stable housing since 1998. Despite multiple referrals, appellant was not participating in any drug treatment or parenting education programs to address the substance abuse problems that led to I.J.'s removal at birth.
 {¶ 7} Appellant refused to disclose the name of I.J.'s father to agency officials. No father was ever identified or located by CCDCFS. Testimony revealed that appellant had a total of seven children, none of whom were in her care or custody.[1] Appellant was not employed and had no source of income. She has no plans for stable housing and her last stable employment was from June to the winter of 2004. Appellant admitted that she had plenty of time and opportunities to complete the case plan objectives, which she became involved with CCDCFS in 1998, but had failed to do so.
 II. {¶ 8} Appellant's assignment of error states the following: "The trial court erred in granting Cuyahoga County Department of Children and Family Services['] motion for permanent custody as such decision was against the manifest weight of the evidence and resulted in a manifest miscarriage of justice."
 III. {¶ 9} In her sole assignment of error, appellant argues that the lower court erred in granting CCDCFS' motion for permanent custody. Appellant further argues that CCDCFS failed to establish that she would not be able to parent her child and failed to remedy the conditions that caused I.J. to be taken away.
 {¶ 10} The standard of proof to be used by the trial court when conducting permanent custody proceedings is that of clear and convincing evidence. In considering an award of permanent custody, the court must determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to CCDCFS and that the child cannot be placed with either parent within a reasonable time. R.C.2151.414(B). See, also, In re La.B., Cuyahoga App. No. 81981,2003-Ohio-6852.
 {¶ 11} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v.Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118.
 {¶ 12} Clear and convincing evidence is a higher standard of proof than that required when we review a manifest weight of the evidence claim. An appellate court will not reverse the judgment of a trial court as being against the manifest weight of the evidence if the judgment is supported by some competent credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 13} When proceeding on a complaint with an original dispositional request for permanent custody, the trial court must satisfy two statutory requirements before ordering that a child be placed in the permanent custody of a children's services agency. The trial court must find "in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and [must determine] in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child." R.C. 2151.353(A)(4).
Placement Within a Reasonable Amount of Time
 {¶ 14} As related to R.C. 2151.414(E)(1) — "Following placement of the child outside of the home and notwithstanding reasonable case planning and diligent efforts by CCDCFS to assist the parents to remedy the conditions that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home and that the parents have failed to substantially benefit from services, and, therefore, have not reduced the risk, and that the child cannot or should not be placed with either parent now or in the foreseeable future."
 {¶ 15} As related to R.C. 2151.414(E)(4) — "The parents have demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 16} Even though appellant has a history of substance abuse dating back to 1998, she did not participate in substance abuse treatment until approximately two weeks prior to the permanency hearing. When not incarcerated, appellant has a history of chronic unemployment and homelessness. Moreover, appellant refused to disclose the identity of I.J.'s father, thereby making identification almost impossible. Appellant has a long history of involvement with CCDCFS, and had parental rights to four other children involuntarily terminated prior to the birth of I.J. Accordingly, I.J.cannot be placed with his parents within a reasonable period of time and should not be placed with either parent.
Best interest determination
 {¶ 17} The second determination in a permanent custody case involves whether granting permanent custody to the agency is in the best interest of the children. This is governed by R.C. 2151.414(B) and (D). Section (D) mandates that the court consider the totality of the circumstances, including five enumerated factors. Although the court must consider all five factors, "only one of these factors needs to be resolved in favor of the award of permanent custody," for the court to terminate parental rights. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942.
 {¶ 18} The trial court is required to consider "all relevant factors, including, but not limited to" those listed at R.C. 2151.414(D). Although the trial court is required to consider each of the factors in making its permanent custody determination, the Eighth District Court of Appeals has noted that "only one of these factors needs to be resolved in favor of the award of permanent custody." In re Moore, supra, at 5, citing In re Shaeffer Children (1993), 85 Ohio App.3d 683. "Under the statute, even in the absence of clear and convincing evidence of one of the enumerated factors, a trial court could still properly determine that granting permanent custody to a state agency is in a child's best interest." In re Shaeffer Children, supra, 85 Ohio App.3d at 692.
 {¶ 19} Under R.C. 2151. 414(D)(1), the court is to consider:
 "the interaction and interrelationship of the child with the child's parents, siblings, foster care givers, and out-of-home providers, and any other person who may affect the child."
 {¶ 20} The parents have no relationship with the child. Appellant visited with the child one time since the child was removed from her care and custody at the time of his birth in June of 2003.[2]
Appellant admitted that she did not know if she had a bond with I.J. because she had only seen him one time.[3] From October of 2004 to the date of the hearing, appellant never disclosed the identity of the father, and there is no evidence or suggestion that I.J.'s father has ever had any contact with the child since his birth.[4]
 {¶ 21} R.C. 2151.414(D)(2) provides that:
 "[T]he court shall consider the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child."
 {¶ 22} At three years of age, the child was too young to express his wishes with respect to his best interests. See, e.g., In reHarlston, Cuyahoga App. No. 80672, 2003-Ohio-282. The child's guardian ad litem testified that the child's best interests would be served by permanent placement with the agency.
 {¶ 23} R.C. 2151.414(D)(3) requires the court to consider:
 "[T]he custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 24} At the time of the filing of the complaint, the child had been in the legal custody of Jerome and Jatana Robinson since the time of his birth on June 13, 2003. For the purposes of R.C. 2151.414(D)(3), therefore, I.J. had not been in the temporary custody of CCDCFS for 20 months at the time of filing the motion for permanent custody, but had been out of appellant's care for his entire life.
 {¶ 25} Under R.C. 2151.414(D)(4) the court must also consider:
 "[T]he child's need for a legally secure permanent placement and whether such a placement can be achieved without a grant of permanent custody to the agency."
 {¶ 26} Testimony established that I.J. was initially removed from his mother's care and custody at the time of his birth. Appellant has refused to disclose the identity of the child's father. I.J. was unable to be placed with any relatives as no appropriate relatives were willing or available to provide a home for the child. The trial court in the case sub judice specifically found that a grant of permanent custody was in the child's best interest.
 {¶ 27} As this factor concerns the child's mother, the record reflects that she has a history of criminal behavior, substance abuse and failed treatment, and unstable employment and housing. She did not comply with her case plan in the instant case, and has four other children that were placed in the permanent custody of CCDCFS. Additionally, no one else came forward to obtain legal custody of the child in this case.
 {¶ 28} Moreover, the guardian ad litem report, journalized December 12, 2005, provides additional evidence that the child does not have an appropriate caregiver available. In addition to the mother, the legal custodian, Jatana Robinson, is unable to care for I.J.:
 "The legal custodian, Jatana Robinson, in this matter has mental health issues that prevent her from caring for the child. Ms. Robinson's court assigned GAL has indicated that his ward is in a state of 'mediated twilight.' Jerome Robinson, the husband of Jatana Robinson, has denied that a problem exists. The undersigned cannot recommend reunification with the Robinson's [sic] because Ms. Robinson would pose a significant risk to the child."
 "The mother of the minor child, Tawana Wring, has a longstanding drug problem that has resulted in the removal of six other children. It is the opinion of the undersigned that the mother of the child poses a significant risk to the child and is not a placement option." "The father of the minor child is unknown." "The undersigned visited the minor child at the foster placement. The foster placement appears to be safe and appropriate."
 {¶ 29} Moreover, further support for the court's decision to not allow Ms. Robinson, the legal guardian, permanent custody is found in the GAL report journalized on November 22, 2005. The guardian ad litem report journalized November 22, 2005, provides the following:
 "I have spoken with the Social Worker Cathy Gorman, CCDCFS, as well as the legal custodian Ms. Jatona Robonson [sic]. I have not spoken with the birth mother due to her incarceration, nor the birth father, due to his unknown whereabouts. In my discussion with Ms. Gorman it has become clear to me that Ms. Robinson has been prescribed no less than nine (9) medications by various health professionals. Many, if not most of the medications, are psychotropic in nature and have been prescribed for Ms. Robinson's psychological, and/or psychiatric issues." "In my interview with Ms. Robinson on September 6, 2005, her communication skills were ineffective at best. She was not alert, and at times seemed to be in a state of medicated twilight." "Based upon my interaction with Ms. Robinson, and my discussions with Ms. Gorman of CCDCFS, it is my recommendation that the child NOT be returned to Ms. Jatona Robinson the former legal custodian."
 {¶ 30} Accordingly, the evidence in the record supports the lower court's decision that neither birth parent nor the legal custodian were fit to have permanent custody of the child.
 {¶ 31} In further support of these findings, the record reflects that appellant has a criminal history and a chronic and severe substance abuse problem with marijuana and cocaine.
 {¶ 32} Based on the evidence in the record, we find that the lower court complied with the statutory requirements in considering all relevant factors, including but not limited to, those listed at R.C.2151.414(D) in determining that permanent custody was in the best interest of I.J. We further find that sufficient evidence exists to support a finding of at least one of the five factors. The trial court's best interest determination was conclusively established.
Reasonable efforts determination
 {¶ 33} This case came before the trial court on a neglect complaint with a prayer for permanent custody. Pursuant to statute, the agency was not required to make reasonable efforts to reunify the child with its parents. Appellant testified that none of her children remain in her care or custody. Further, appellant admitted that at least one of the children was placed for adoption following a grant of permanent custody to CCDCFS.
 {¶ 34} R.C. 2151.419(A)(2) states:
 "If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:"
 {¶ 35} R.C. 2151.419(A)(2)(e) states: "The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 36} The court below found that CCDCFS made reasonable efforts despite such a finding not being required under the prevailing permanent custody analysis. Despite the fact that this finding was not required pursuant to R.C. 2151.419, said finding was supported by the evidence in the record, which demonstrates that CCDCFS made ongoing case-planning efforts to assist appellant in dealing with her substance abuse and related issues.
 {¶ 37} Accordingly, we find that the trial court's decision to grant permanent custody to CCDCFS was supported by competent, credible evidence going to all of the essential elements for permanent custody.
 {¶ 38} Appellant's assignment of error is overruled. Judgment affirmed. It is ordered that appellees recover from appellant costs herein taxed. It is ordered that a special mandate be sent to said court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Tr. 19.
[2] Tr. 21-22.
[3] Tr. 49-50.
[4] Tr. 11.