{¶ 1} The juvenile division of the court of common pleas terminated the parental rights of mother L.T., and awarded permanent custody of child Z.T. to the Cuyahoga County Department of Children and Family Services ("the agency"). The mother appeals, complaining that (1) the court improperly admitted hearsay testimony, (2) principles of res judicata barred the custody determination, (3) the court utilized an incorrect standard of proof, and (4) the court's judgment is against the manifest weight of the evidence. We affirm the juvenile division's decision.
 {¶ 2} The child was born prematurely on February 16, 2005. By March 22, 2005, the child had been placed into the protective supervision of the agency. On April 4, 2005, the agency filed a complaint to have the child declared dependent and placed into its permanent custody. The complaint recited the mother's history with the agency, stating that three of her children had been adopted and five more were placed in the legal custody of relatives. The complaint alleged that three of those children had tested positive for the presence of illegal drugs at the time of their birth.
 {¶ 3} At the same time it filed its complaint, the agency sought predispositional custody of the child. In an affidavit, a social worker alleged that the mother left the child with a friend and had not returned. Her whereabouts were unknown. The friend called the mother's cousin and told her that she believed the mother had been using drugs. The cousin picked up the child and reported the *Page 4 
mother's absence to the agency. The child has continued to live with the cousin throughout these proceedings.
 {¶ 4} On June 24, 2005, the court convened for trial on the agency's motion for permanent custody. That same day, the agency filed a motion asking the court to find that it did not have to make reasonable efforts at reunification in light of the mother's past history with the agency.
 {¶ 5} The court heard evidence that the mother had not been using drugs at the time she left the child with her friend. Testimony showed that the mother had been on parole for a criminal offense and subject to drug screenings, none of which she had failed. In mid-April 2005, the mother underwent a psychiatric screening. The mother's case manager testified that the mother had been suffering from severe depression when she left the child. She had apparently been medicated for this condition, but stopped taking her medication when she became pregnant. The case worker said that the mother's depression had been controlled by medication following the birth of the child, and that the mother had been released from her parole on June 3, 2005.
 {¶ 6} The court denied the motion for permanent custody. It terminated the order of emergency protective custody and granted the agency temporary custody of the child. It also denied the agency's request for a reasonable efforts by-pass regarding reunification efforts. The court stated that it accepted evidence that the mother had been in a depressive episode at the time she abandoned the child. It *Page 5 
concluded that reasonable efforts at reunification should be made by the agency and that it would continue the case for three months.
 {¶ 7} The agency then adopted a case plan. The case plan called for parenting education, a referral for drug assessment and treatment, stable employment, assistance with establishing the paternity of the child, and a mental health assessment with treatment.
 {¶ 8} In September 2005, the court resumed its hearing. The mother did not appear. The agency told the court that the mother had failed to complete the case plan objectives. She had apparently missed all of her psychiatric counseling sessions and thus had not received her medication. The agency also stated that the mother neither helped identify putative fathers, nor attended any of her planned visits with the child since the June 2005 hearing. Based on these representations, the court found that the agency had made reasonable efforts at reunification and granted the agency leave to file a motion for permanent custody.
 {¶ 9} Subsequent attempts at a hearing to determine permanent custody were hindered by the mother's inability to be present due to her incarceration on drug charges. The hearing went forward on March 3, 2006.
 {¶ 10} The mother's social worker testified that she had been assigned to the case since the court granted the April 2005 order for emergency protective custody. She told the court that the mother had failed to complete her case plan. The court accepted into evidence an exhibit showing that the mother had pleaded guilty to drug *Page 6 
trafficking on December 22, 2005. She had apparently been incarcerated shortly after the June 2005 hearing and unable to complete any portion of the case plan. Hence, the mother did not complete random drug screening, did not attend any of the substance abuse classes, did not attend any counseling, and did not complete parenting classes.
 {¶ 11} The social worker testified that the mother had not been continuously incarcerated during the period from June 2005 to March 2006. Although she did not attend the parenting classes in November 2005, she asked for a second referral to parenting classes. She did not attend these classes, however, as she was again jailed. The social worker also testified that the mother had supervised visitation with the child. The last visitation noted in the case file occurred in August 2005.
 {¶ 12} The social worker testified that the mother had passed a drug test after the June 2005 hearing, but had not thereafter made herself available for random drug screenings as required by the case plan. The social worker explained that the mother gave a telephone number where she could be reached, but she never did speak directly to the mother at that number. She left messages for the mother, telling her to come in for drug tests. But those messages went unheeded. The social worker contacted the mother's substance abuse counselor, but the counselor had not heard from the mother. The counselor told the social worker that the mother had not been in for her medication. *Page 7 
 {¶ 13} The agency gave other evidence relating to the mother's failure to complete the case plan. The agency twice referred the mother for parenting education, but she did not participate. She had not established stable employment, nor had she maintained stable housing. Three times the social worker visited the address given to her by the mother, but the mother was never present.
 {¶ 14} The mother testified and admitted that she relapsed into drug use in August 2005, leading to her arrest. She claimed to have been jailed for 20 days while awaiting a preliminary hearing, but that the state dropped the charges. She said that she was reindicted in September 2005 and pleaded guilty to trafficking. She said that the court sentenced her to treatment. After trial, she began attending support groups and was waiting for "a bed for treatment." The mother said that she was arrested in October 2005 for allegedly possessing a crack pipe. She pleaded guilty to possession. In December 2005, she was again arrested, this time for assaulting a police officer. This charge was pending at the time the court heard the agency's motion for permanent custody, and the mother remained jailed while awaiting trial on the assault charge.
 {¶ 15} The mother said that her jailing affected her ability to seek treatment because the treatment center would not admit her while she had an open criminal case.
 {¶ 16} The guardian ad litem recommended that the court terminate the mother's custody, saying that the child needed a stable home. *Page 8 
 {¶ 17} The court found that the child could not be placed with the mother because the mother had failed continuously and repeatedly to substantially remedy the conditions which caused the child to be placed outside the home. The court found that the mother's chronic chemical dependency is so severe that it prevents her from being able to provide the child with a permanent home at the present time and, "as anticipated, within one year." The court also found that the mother has demonstrated a lack of commitment to the child by failing to regularly support, visit, or communicate with the child when able to do so.
 I {¶ 18} The mother first argues that the court erred by admitting into evidence extensive hearsay testimony relating to the circumstances surrounding the removal of the child. The agency's sole witness, the social worker, testified to her knowledge of the events on April 4, 2005, including the statement "* * * the person that she left the child with stated that it's possible that mother could have regressed back to using drugs * * *." The mother claims that this constituted reversible error.
 {¶ 19} The mother failed to object to the alleged hearsay; consequently, she has waived all but plain error. State v. Jones,91 Ohio St.3d 335, 344, 2001-Ohio-57. Crim.R. 52(B) states that plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v.Long (1978), 53 *Page 9 
Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990),50 Ohio St.3d 58, 62.
 {¶ 20} We find no such error with the social worker's testimony. R.C.2151.35(B)(2)(b) states that during a dispositional hearing, "[t]he court may admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence; * * *" Citing to this rule, we have held that it is not error for a social worker to testify to reports that predated her assignment to a particular case. See In re Gilbert (Mar. 23, 2000), Cuyahoga App. No. 75469.
 {¶ 21} Even if hearsay were barred in dispositional hearings, the social worker could competently testify to the contents of the agency's case file. Evid.R. 803(6) creates a hearsay exception for records kept in the ordinary course of business. See In re McCullough (Dec. 6, 2001), Cuyahoga App. No. 79212. Likewise, Evid.R. 803(8) creates a hearsay exception for public records and reports which set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, the agency or office has a duty to report. See In reBrown, Athens App. No. 06CA4, 2006-Ohio-2863, at ¶ 32, fn.1; In reGarvin (June 15, 2000), Cuyahoga App. Nos. 75329 and 75410. Under either exception, the social worker's testimony concerning statements made during the course of the agency's investigation would have been admissible because the contents of her file, including the statement by the cousin, had been compiled as part of the social worker's activities. *Page 10 
 II {¶ 22} For her second argument, the mother asserts that principles of res judicata bar the court's order granting the agency permanent custody of the child. She maintains that the court's refusal to order permanent custody in the first dispositional hearing barred any subsequent redetermination of that finding.
 {¶ 23} In Grava v. Parkman Twp., 73 Ohio St.3d 379, 1995-Ohio-331, the syllabus states, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (Internal citations omitted.)
 {¶ 24} Principles of res judicata do not apply to decisions in dispositional hearings because the court retains continuing jurisdiction. See In re Ament (2001), 142 Ohio App.3d 302, 310. Even though the court has made a dispositional order, R.C. 2151.353(E)(1) orders the court to retain jurisdiction over the child until the child reaches the age of eighteen years, unless the child is mentally or physically disabled or, with some minor exceptions, has been adopted.
 {¶ 25} The court not only retained continuing jurisdiction over the agency's motion for permanent custody, it recognized that fact at the conclusion of the first dispositional hearing. Although it denied the agency's motion for permanent custody, the judge told the parties "I would like to review this case in September." At the September hearing, the court heard how the mother had not completed her *Page 11 
case plan and could not be reached. This convinced the court to find that the agency had made reasonable efforts at reunification, a predicate finding for allowing the agency to again seek permanent custody. The mother's failure to comply with the case plan constituted a change in circumstances which warranted the agency's new motion for permanent custody.
 III {¶ 26} The mother's third argument is that the Ohio courts have been applying an incorrect standard of review when reviewing a court's judgment terminating parental rights. She maintains that the abuse of discretion standard which we are required to use is too deferential and that, as in criminal cases, we should employ a manifest weight of the evidence standard.
 {¶ 27} In order to terminate parental rights and grant permanent custody to the agency, the court must apply a two-prong test. First, the court must determine, by clear and convincing evidence, that it is in the best interest of the child to terminate parental rights. See R.C.2151.414(B)(1). Second, the court must find by clear and convincing evidence that the child is orphaned, abandoned, or that the child cannot or should not be placed with either parent. See R.C. 2151.414(B)(1)-(4).
 {¶ 28} R.C. 2151.414(D) sets forth the factors the court must consider when determining whether permanent custody is in the best interests of the child:
 {¶ 29} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section *Page 12 
2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 35} "For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." *Page 13 
 {¶ 36} When considering whether a child cannot or should not be placed with the parents within a reasonable time, the court must consider the factors set forth in R.C. 2151.414(E). That section states in relevant part:
 {¶ 37} "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 38} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 39} "* * * *Page 14 
 {¶ 40} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 41} "* * *
 {¶ 42} "(16) Any other factor the court considers relevant."
 {¶ 43} A R.C. 2151.414(D) determination of a child's best interests is an application of the court's discretion based upon a nonexclusive list of factors. We review that determination for an abuse of discretion. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 44} A R.C. 2151.414(E) determination that a child cannot or should not be placed with his parents within a reasonable time is a finding of fact. This conclusion necessarily flows from the use of the term "clear and convincing evidence" as the standard to be applied by the court. Moreover, the determination itself is mandatory — if the court finds, as a matter of fact, that any one of the factors set forth exists, it "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * *." We review this determination under the manifest weight of the evidence standard of review. A claim that a factual finding is against the manifest weight of the evidence requires us to *Page 15 
examine the evidence and determine whether the trier of fact clearly lost its way. In re M.W., Cuyahoga App. No. 83390, 2005-Ohio-1302.
 {¶ 45} These standards of review do not deprive the mother of an appellate review commensurate with the seriousness of her loss of parental rights. We take issue with the mother's suggestion that a manifest weight of the evidence standard of review is a lesser standard of review than an abuse of discretion standard. Insofar as the court engages in factfinding, we employ the manifest weight of the evidence standard as we do in all cases where factfinding is challenged. Likewise, when the court is required to apply its discretion, we employ the abuse of discretion standard of review. We simply have no authority to apply the abuse of discretion standard to questions of credibility, which repose with the trier of fact.
 IV {¶ 46} For her fourth assignment of error, the mother complains that the court erred by finding that the agency made reasonable efforts to reunite the child with her. She also argues that the award of permanent custody is against the manifest weight of the evidence.
 A {¶ 47} The mother argues that the evidence failed to show that the agency made reasonable efforts to reunite her with the child. She maintains that the agency failed to engage in good faith case planning, pointing to the agency's May 16, 2005 motion requesting that it be excused from making reasonable efforts at reunification *Page 16 
pursuant to R.C. 2151.419(A)(2)(e) because the mother "has had parental rights involuntarily terminated * * * with respect to a sibling of the child." Although the court denied that motion on July 18, 2005 and the agency thereafter did implement a case plan, the mother believes that the R.C. 2151.419(A)(2)(e) motion showed the agency never had any intention of working toward reunification and therefore failed to make a reasonable effort at reunification.
 {¶ 48} In In re Z.Y., Cuyahoga App. No. 86293, 2006-Ohio-300, we rejected an argument that the agency had to make a showing of reasonable efforts it made toward reunification in cases like this:
 {¶ 49} "Appellant's reliance on R.C. 2151.419(A)(1) [relating to the agency's obligations to show that it made reasonable efforts to prevent removal or to return the child home], however, is misplaced. R.C.2151.419 `applies only to hearings held pursuant [to] R.C. 2151.28
[adjudicatory hearings], division (E) of R.C. 2151.31 [ex parte emergency orders for custody], R.C. 2151.314 [detention or shelter care], R.C. 2151.33 [temporary care or emergency medical treatment] or R.C. 2151.353 [disposition of abused, neglected or dependent child].'In re C.N., Cuyahoga App. No. 81813, 2003-Ohio-2048. In the instant case, the motion for permanent custody was filed under R.C. 2151.413
[agency having been granted temporary custody may request permanent custody]; therefore, a reasonable efforts determination is not required. See, also, In re La.B., Cuyahoga App. No. 81981, 2003-Ohio-6852; In reK. K.H., Cuyahoga App. No. 83410, 2004-Ohio-4629." *Page 17 
 {¶ 50} The agency's motion for permanent custody specifically stated that it was brought pursuant to R.C. 2151.413; consequently, the court had no duty to engage in a reasonable efforts analysis. Although such an analysis was not required, we find that nontheless the agency did make reasonable reunification efforts.
 B {¶ 51} The mother next argues that the court entered the order granting permanent custody on essentially the same evidence that it had found to be insufficient in the June 2005 hearing. She maintains that this fact lends credence to her claim that the agency had "weak" evidence to support its motion for permanent custody.
 {¶ 52} This argument merely underscores the mother's insistence on viewing only that evidence presented at the June 2005 hearing. This position ignores the agency's evidence of events transpiring after that hearing, including the mother's incarceration and her failure to complete various elements of the case plan. The court made it clear in June 2005 that it wished to continue the matter for three months so that the mother could demonstrate her fitness to resume custody. The agency presented evidence to the court at the subsequent hearing on the mother's lack of progress during that interval. In no event can it be said that the court relied solely on evidence it heard in June 2005 when granting the agency's motion for permanent custody. *Page 18 
 C {¶ 53} Finally, the mother argues that the award of permanent custody to the agency is against the manifest weight of the evidence because the agency failed to show that the child could not be placed with the parents within a reasonable period of time and that granting permanent custody to the agency was in the child's best interests.
 1 {¶ 54} As we previously noted, the best interests determination is one within the discretion of the court, reviewable subject only to an abuse of that discretion. Applying this standard, we cannot find that the court acted in an unreasonable, arbitrary, or unconscionable manner.
 {¶ 55} The court stated that it considered all relevant factors set forth in R.C. 2151.414(D), but it did not specify which of those factors it used in making its finding. The court did note that the mother had her parental rights terminated with respect to certain siblings of the child. This is a proper factor for consideration. R.C. 2151.414(D) includes a reference to sections (E)(7) to (11) of R.C. 2151.414(E). Section (E)(11) of R.C. 2151.414(E) allows the court to consider that "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child." *Page 19 
 {¶ 56} We have consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights. See In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942; In re T.M., Cuyahoga App. No. 83933, 2004-Ohio-5222 at ¶ 58; In re I. J., Cuyahoga App. No. 87900, 2006-Ohio-6263, at ¶ 17. There is no factual issue as to the prior termination of rights against the child's siblings. Accordingly, we do not find that the court abused its discretion by concluding that granting permanent custody to the agency was in the child's best interests.
 2 {¶ 57} We also find that there was competent, credible evidence to support the court's conclusion that the child cannot or should not be placed with either parent within a reasonable period of time.[1]
 {¶ 58} The court first found that the mother had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. See R.C. 2151.414(E)(1). The agency provided competent, credible evidence to show that the mother had not completed her case plan by addressing her substance abuse and parenting issues. *Page 20 
 {¶ 59} The court also found that the mother's chronic chemical dependency is so severe that it prevents her from being able to provide the child with an adequate, permanent home at the present time and, as anticipated, within one year. R.C. 2151.414(E)(2). The court heard the mother's admission that she relapsed into drug use. The mother also admitted that she had two drug-related arrests in a three-month period. Her incarceration on those charges prevented her from obtaining treatment for her dependency, thus supporting the court's conclusion that her chemical dependency prevented her from providing the child with an adequate, permanent home either now or within one year.
 {¶ 60} The mother had not regularly supported, communicated with, or visited with the child. See R.C. 2151.414(E)(4). The social worker testified that the mother last visited with the child in August 2005. The mother disputed this statement, saying that she visited with the child in December 2005. The social worker had no record of this visit and defended the accuracy of her notes, stating that it was her practice to make her notes "every day or other day." The court's journal entry finding that the mother had not visited with the child obviously resolved this factual issue against the mother. Even without the visitation component, the evidence showed without contradiction that the mother was not employed, nor had she provided any financial support for the child. The mother's failures to support, communicate, or visit with the child were obviously due in part to her jailing as she awaited trial on two different criminal cases. *Page 21 
 {¶ 61} Finally, the court found that the mother had demonstrated an unwillingness to provide an adequate, permanent home for the child. R.C.2151.414(E)(4). With her relapse into drugs and subsequent criminal activities, the mother demonstrated her continued unwillingness or inability to take the steps necessary to permit reunification with the child. Being confined in jail prevented her from seeking treatment for her chemical dependency. The chemical dependency made it impossible for the mother to hold a job. Throughout most of these proceedings, the mother failed to contact the social worker or her counselor to inform them of her whereabouts. When she did contact her counselor in December 2005, her pending criminal case prevented her from being placed in in-patient chemical dependency treatment.
 {¶ 62} In her efforts to maintain the possibility of reunification with her child, the mother points to evidence of prior negative drug tests, her participation in the Womens' Re-entry Program and attendance at support groups. The court obviously determined that these efforts, though they may have been earnest, paled in comparison to the evidence against the possibility of reunification.
 {¶ 63} We find competent, credible evidence to support the court's determination that the child could not be placed with the mother within a reasonable period of time. Moreover, the court's determination to grant permanent custody to the agency was not an abuse of discretion. We therefore affirm the order granting permanent custody to the agency. *Page 22 
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court — Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] The mother identified two men as potential biological fathers of the child. Neither man was available for paternity testing: one had been in prison; the other could not be located. Neither man attended the hearing despite being given notice of the hearing by publication. *Page 1