JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-father ("father") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of his child, D.R., to appellee, Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the following reasons, we affirm the judgment of the trial court. *Page 3 
 {¶ 2} D.R. was born on January 2, 2007, and three days later, placed in shelter care. On February 21, 2007, CCDCFS filed a complaint, alleging that D.R. was an abused and dependent child, and requesting a disposition of permanent custody of him. In the complaint, a social worker for CCDCFS, Andrea Blackman ("social worker"), claimed, inter alia, that mother and D.R. tested positive for cocaine at D.R.'s birth; alleged father had failed to establish paternity; he lacked appropriate housing for D.R.; he failed to benefit from anger management and domestic violence courses; he and mother had another child, D.R.'s sibling, who was in temporary custody of CCDCFS, case no. AD05901739; he and mother had a significant substance abuse problem, preventing them from providing appropriate care and supervision to D.R.; he and mother failed to comply with drug assessments; and he continued to test positive for cocaine.
 {¶ 3} That same day, CCDCFS also filed a motion for order of predispositional temporary custody. The juvenile court magistrate held a hearing the next day, and granted emergency temporary care and custody to CCDCFS. The court found that probable cause existed to remove D.R. pursuant to R.C. 2151.31. The court continued D.R. in shelter care because there were no suitable relatives to place him with.
 {¶ 4} Approximately two months later, the GAL filed his report and recommendation, indicating "[t]he child is doing very well in placement where he is placed with his [sibling] * * *. The foster parents of [D.R.] have expressed their interest *Page 4 
in adopting him if Permanent Custody is granted. * * * The parents have failed to substantially comply with their case plans despite being given ample time and opportunity to do so. Father has recently tested positive for drugs and been discharged from a drug treatment program. * * * [I]t would be in [D.R.'s] best interest if the [CCDCFS] were granted permanent custody of him."
 {¶ 5} CCDCFS added D.R. to his siblings' case plan and then filed it. According to the case plan, father was to refrain from drug and alcohol use; complete a drug and alcohol assessment and follow recommendations; receive a psychological evaluation and follow recommendations; maintain suitable housing; pay rent and utilities; maintain an adequate income and budget; provide food, clothing, and an education to D.R.; abstain from domestic violence; and attend domestic violence and/or anger management classes and follow recommendations.
 {¶ 6} On May 8, 2007, the juvenile court held a hearing on the adjudication and disposition of D.R. The state amended the complaint to reflect that father established paternity of D.R. The state also amended the complaint to indicate that CCDCFS had permanent custody of the parents' other child. Father then stipulated to the averments contained in the amended complaint.
 {¶ 7} A family advocate for CCDCFS, Brenda Hale ("family advocate"), testified that a referral was made to CCDCFS because D.R. and mother tested *Page 5 
positive for cocaine upon D.R.'s birth.[1] She explained that the parents have another child in the permanent custody of CCDCFS.[2]
 {¶ 8} The state then requested the court to make a finding that D.R. was abused and dependent. Father's counsel stated, "[t]he allegations in the complaint in regards to father are more dispositional[ly] oriented. And because of that my client is not going to object to a finding of abuse and dependency." Thus, the court adjudicated the child abused and dependent.
 {¶ 9} The family advocate continued to testify regarding the disposition of D.R. She stated that CCDCFS first set up a case plan for the parents two years ago when the agency obtained temporary custody of their other child. She said that the case plan was later amended to include D.R.
 {¶ 10} The family advocate explained that father tested positive for cocaine on March 21, 2007 and April 17, 2007. He then completed a drug assessment. She stated that CCDCFS referred father twice for drug treatment during the pending case of his other child, but he failed to complete it. She did not believe that father would be amenable to drug treatment because he denied using drugs.
 {¶ 11} The family advocate additionally testified that CCDCFS referred father for a psychological evaluation, but he failed to appear. She also stated that father *Page 6 
had resided at his brother's house, however it was raided and shut down for drugs. She further explained that in March 2007, father was sentenced in Cleveland Municipal Court, for a domestic violence charge between him and mother.[3] As part of his sentence, the court ordered father to complete a domestic violence program. The family advocate said that father failed to show he completed it.
 {¶ 12} On cross-examination, the family advocate testified that father completed anger management classes and a domestic violence class. She also agreed that father qualified for a housing voucher and a one bedroom apartment through the U.S. Department of Housing and Urban Development ("HUD").
 {¶ 13} The social worker then testified that she had been the parents' social worker since September 2006. She agreed that father completed domestic violence counseling, but shortly thereafter, father and mother got into a physical altercation. She referred father for another domestic violence class, but he failed to complete it.
 {¶ 14} The social worker also stated that she referred father to the court psychiatric clinic for a psychological evaluation, but he failed to appear. She further testified that although father obtained a housing voucher and HUD offered him housing, he did not have a residence established. She said that father was unemployed and could not pay for utilities. She did not believe that D.R.'s parents would complete the case plan. *Page 7 
 {¶ 15} The social worker additionally testified that D.R. was living with a foster family and they were in the process of adopting his sibling. She said the foster family was also interested in adopting D.R. She explained that D.R. had severe asthma, bronchitis, a lazy eye, and there was concern that he may be mentally retarded. She agreed that permanent custody of D.R. was in his best interest because, "[The foster parents] can provide him with a safe environment, a drug-free environment and they will be able to fulfill his medical needs."
 {¶ 16} On cross-examination, the social worker agreed that father completed a parenting and anger management class and domestic violence classes. However, she testified that father did not benefit from those classes.
 {¶ 17} In a May 30, 2007 judgment, the juvenile court found that the allegations of the complaint had been proven by clear and convincing evidence. Specifically the juvenile court found that, "[D.R.] is an ABUSED and DEPENDENT child as defined in sections 2151.31(C) and2151.04(D) of the Ohio Revised Code in the following particulars:
 {¶ 18} "1. Child and mother tested positive for cocaine at the time of the child's birth.
 {¶ 19} "* * *
 {¶ 20} "6. Father lacks appropriate housing in which to provide care for his child. *Page 8 
 {¶ 21} "7. Father is the father of the child's sibling who is currently in the permanent custody of CCDCFS, case AD05901739.
 {¶ 22} "8. Father has a substance abuse problem, specifically cocaine, which prevents him from providing appropriate care and supervision of the child.
 {¶ 23} "9. Father was referred to a drug assessment but has failed to comply and continues to test positive for cocaine.
 {¶ 24} "10. Father was referred to anger management and domestic violence courses but has failed to benefit from the services."
 {¶ 25} The juvenile court further noted, "[t]he Court heard testimony and accepted evidence as it relates to the request for Permanent Custody.
 {¶ 26} "The Court received the report of the [GAL] recommending that an order of Permanent Custody to [CCDCFS] would be in the child's best interest.
 {¶ 27} "* * * [T]he Court finds by clear and convincing evidence that the child cannot be placed with his parents within a reasonable time or should not be placed with [his] parents for the following reasons pursuant to Section 2151.414(E).
 {¶ 28} "[1.] Following the placement of the child outside of the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. *Page 9 
 {¶ 29} "[2.] The parents have chronic chemical dependency that is so severe that it prevents them from providing the child with an adequate permanent home at the present time and, as anticipated, within one year.
 {¶ 30} "[3.] The parents have demonstrated an unwillingness to provide an adequate home for the child.
 {¶ 31} "[4.] The parents have had their parental rights terminated with respect to a sibling of the child."
 {¶ 32} The court also stated, "* * * based on the evidence presented and the recommendation of the [GAL] for the child and after considering all relevant factors, including but not limited to each of the factors listed at O.R.C. 2154.414(D)(1)-(5), that an order of Permanent Custody is in the child's best interest."
 {¶ 33} Finally, the court found that "* * * reasonable efforts were made by the [CCDCFS] to prevent the continued removal of the child from the home and to finalize a permanency plan, to wit: substance abuse assessment and treatment, psychological evaluation, mental health counseling, housing and employment referrals and case management. Permanent Custody/Adoption is the permanency plan. The Court approves the permanency plan."
 {¶ 34} It is from this judgment father appeals, raising the following assignments of error:
 {¶ 35} "[1.] The [CCDCFS] failed to establish that [father] failed to substantially remedy the condition that caused the removal of the child. *Page 10 
 {¶ 36} "[2.] The [CCDCFS] failed to establish that [father] had a chronic chemical dependency that was so severe that it prevented him from providing the child with an adequate permanent home at the present time and, as anticipated, within one year.
 {¶ 37} [3.] [Father] was denied of his right to effective assistance of counsel when trial counsel stipulated to several matters that could be used to grant permanent custody."
 {¶ 38} For purposes of this appeal we shall address assignments of error one and two together because both challenge the award of permanent custody and the evidence upon which it is based.
 {¶ 39} First, father argues that pursuant to R.C. 2151.414(E)(1), CCDCFS failed to establish that he did not substantially remedy his housing and domestic violence issues, which caused D.R. to be removed from the home. Next, father asserts that CCDCFS failed to prove under R.C. 2151.414(E)(2), that his chemical dependency was so severe that he could not provide an adequate home at the present time and, as anticipated, within one year of the hearing. Father further contends that pursuant to R.C. 2151.414(E)(9), CCDCFS failed to establish that he placed D.R. in substantial risk two or more times due to his drug use and that he had refused treatment two or more times. Lastly, father maintains that he was not afforded enough time to complete the case plan. *Page 11 
 {¶ 40} The termination of parental rights is governed by R.C.2151.414. In re M.H., 8th Dist. No. 80620, 2002-Ohio-2968, at § 22. A trial court must apply a two-prong test under this statute, measured by clear and convincing evidence. Id. With respect to this court's standard of review, we stated in In re M.H.:
 {¶ 41} "`Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. A determination of whether something has been proven by clear and convincing evidence will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. If a burden of proof must be met with clear and convincing evidence, a reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy that burden of proof.'" Id., quoting In re EM. (Nov. 8, 2001), 8th Dist. No. 79249, 2001 Ohio App. LEXIS 5011.
 {¶ 42} Thus, we must look to the entire record to determine whether the trial court had sufficient evidence to clearly and convincingly find that it was in D.R.'s best interest to place him in the permanent custody of CCDCFS and that D.R. could not be placed with either parent in a reasonable period of time or should not have been placed with the parents. After a thorough review of the evidence, we conclude that it did. *Page 12 
 {¶ 43} "In Troxel v. Granville (2000), 530 U.S. 57, 65 * * *, the United States Supreme Court noted that parents' interest in the care, custody, and control of their children Is perhaps the oldest of the fundamental liberty interests recognized by this Court.' The protection of the family unit has long been a paramount concern of the courts * * *." In reD.A., 113 Ohio St.3d 88, 2007-Ohio-1105, at § 8.
 {¶ 44} The Ohio Supreme Court also noted that "`[p]ermanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case. * * * Therefore, parents "must be afforded every procedural and substantive protection the law allows." * * *'" Id. at § 10.
 {¶ 45} Parents' fundamental interest is not absolute. "Once a case reaches the disposition phase, the best interest of the child controls. The termination of parental rights should be an alternative of last resort.'" Id. at § 11.
 {¶ 46} Therefore, before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759.
 {¶ 47} Ohio law provides for two means by which an authorized agency may seek to obtain permanent custody of a child. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency *Page 13 
may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. 2151.413, R.C. 2151.27(C), and R.C.2151.353(A)(4).
 {¶ 48} In order to grant permanent custody of a child to an agency, the trial court must apply a two-prong test. R.C. 2151.414(B). Specifically, the juvenile court must find, by clear and convincing evidence, that: (1) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors enumerated in R.C. 2151.414(D); and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, pursuant to at least one of the factors listed in R.C.2151.414(E).
 {¶ 49} The first prong of the analysis, under R.C. 2151.414(D), provides that in determining the best interest of the child, "the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 50} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 51} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard to the maturity of the child;
 {¶ 52} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public service agencies * * * for twelve or more months of a consecutive twenty-two month period * * *; *Page 14 
 {¶ 53} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 54} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents of the child."
 {¶ 55} Initially, we note that father does not argue that CCDCFS failed to prove the factors under R.C. 2151.414(D) however, we shall still address them.
 {¶ 56} Although the trial court did not specify the best interest factors that applied to this case, it still determined that an order of permanent custody was in the child's best interest. The court based its decision on the evidence, the recommendation of the GAL for the child, and all the relevant factors, including but not limited to each of the factors listed in R.C. 2154.414(D)(1)-(5).
 {¶ 57} After reviewing the evidence, we conclude there is clear and convincing evidence to support the juvenile court's determination that it was in D.R.'s best interest to be placed in the permanent custody of CCDCFS. R.C. 2151.414(D) does not require the juvenile court to find that each best interest factor applies, only that it consider each one. This court has "consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to terminate parental rights."In re Z.T., 8th Dist. No. 88009, 2007-Ohio-827, at § 56, citing In reMoore (Aug. 31, 2000), 8th Dist. No. *Page 15 
76942, 2000 Ohio App. LEXIS 3958; In re T.M., 8th Dist. No. 83933,2004-Ohio-5222; In re I.J., 8th Dist. No. 87900, 2006-Ohio-6263.
 {¶ 58} In the case sub judice, D.R. entered temporary custody of CCDCFS on March 5, 2007.[4] At the disposition hearing, the family advocate testified that the parents have another child that is in permanent custody of CCDCFS, and D.R.'s foster parents adopted her. The state admitted a certified copy of the permanent custody order into evidence. The GAL and the social worker stated that the foster parents were also interested in adopting D.R.
 {¶ 59} The GAL recommended that permanent custody be granted to CCDCFS because D.R. was "doing very well" with his foster family and sibling. The social worker testified that permanent custody of D.R. was in his best interest because the foster parents could provide for his medical needs and raise him in a safe and drug-free environment. She also explained that D.R. had severe asthma, bronchitis, a lazy eye, and he could possibly be mentally retarded.
 {¶ 60} Although the family advocate and the social worker both testified that father obtained a housing voucher and qualified for housing through HUD, he did not have a residence established. The social worker also stated that father was unemployed. Moreover, following a disorderly conduct conviction against mother in *Page 16 
March 2007, just weeks after D.R. was born, father failed to complete a domestic violence program. Father also failed to appear for his psychological evaluation.
 {¶ 61} Additionally, the family advocate stated that father tested positive for cocaine on March 21, 2007 and April 17, 2007. CCDCFS referred father twice for drug treatment, but he failed to complete it. The family advocate did not believe that father would be amenable to drug treatment because he denied using drugs.
 {¶ 62} Therefore, as to the first prong of the analysis, we conclude that there was sufficient evidence to clearly and convincingly show that it was in D.R.'s best interest to be placed in the permanent custody of CCDCFS.
 {¶ 63} The second prong of the test under R.C. 2151.414(E) sets forth sixteen factors that the trial court must consider in determining "whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents[.]" Under this statute, a trial court need only find one of these factors, by clear and convincing evidence, in order to award permanent custody to an authorized agency.
 {¶ 64} Moreover, if a court finds, as a matter of fact, that any one of the factors set forth in R.C. 2951.414(E) exist, it "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * *." (Emphasis added.) Thus, the determination itself is mandatory. See In reM.W., 8th Dist. No. 83390, 2005-Ohio-1302. *Page 17 
 {¶ 65} In the case at bar, the trial court made findings as to the following four R.C. 2151.414(E) factors:
 {¶ 66} "[1.] Following the placement of the child outside of the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.
 {¶ 67} "[2.] The parents have chronic chemical dependency that is so severe that it prevents them from providing the child with an adequate permanent home at the present time and, as anticipated, within one year.
 {¶ 68} "[3.] The parents have demonstrated an unwillingness to provide an adequate home for the child.
 {¶ 69} "[4.] The parents have had their parental rights terminated with respect to a sibling of the child."[5]
 {¶ 70} Regarding the first finding, the record supports the trial court's conclusion. The family advocate testified that two years prior to the hearing, CCDCFS set up a case plan for the parents when the agency obtained temporary custody of their other child. CCDCFS amended the case plan to include D.R. *Page 18 
 {¶ 71} There was evidence presented that father tested positive for cocaine on March 21, 2007 and April 17, 2007. He denied he used drugs and failed to attend drug treatment. Father also failed to appear for a psychological examination. Despite obtaining a housing voucher and qualifying for housing through HUD, father did not have a residence established. There was also testimony that father was unemployed.
 {¶ 72} Although the record shows that father completed an anger management class, a domestic violence class, and a parenting class, he was convicted of disorderly conduct against mother just weeks after D.R. was born and failed to complete a second domestic violence class after his conviction. This shows that father did not benefit from the classes. Father failed continuously and repeatedly to substantially remedy the conditions causing his older child and this child to be placed outside the home, regardless of the efforts of CCDCFS to help him.
 {¶ 73} The record also supports the trial court's second and third findings. Father had lived with his brother, but the house was raided and shut down for drugs. Although father obtained a housing voucher and qualified for housing through HUD, he failed to establish a residence. He was also unemployed and without means to maintain a residence or support a child, especially one with medical needs.
 {¶ 74} Additionally, father had a history of substance abuse. Although he denied using cocaine, he tested positive for it two times after D.R. was born. He *Page 19 
also failed to complete drug treatment twice, during the pending case of his other child.
 {¶ 75} Thus, under the totality of the circumstances, there was substantial evidence showing that father's chemical dependency was so severe that he was unable to provide an adequate permanent home for D.R. at the present time and, as anticipated, within one year of the hearing. Further, father demonstrated an unwillingness to provide an adequate home for D.R.
 {¶ 76} In addition, the record clearly supports the trial courts' fourth finding that under R.C. 2151.414(E)(11), the parents have had their parental rights terminated with respect to a sibling of the child. The family advocate testified that the parents have another child that is in permanent custody of CCDCFS and D.R.'s foster parents adopted her. The state admitted a certified copy of the permanent custody order into evidence.
 {¶ 77} Finally, father maintains that he was not permitted enough time to complete the case plan. We disagree; CCDCFS set up a case plan for the parents two years prior to this hearing and father had still not completed it. Although the case plan was originally for D.R.'s sibling, it was later amended to include D.R. Father has had more than two years to complete the case plan, but he remains unemployed, with no stable residence, continually tests positive for cocaine, still has domestic violence issues, and was convicted of a crime against mother just weeks after she gave birth to D.R. *Page 20 
 {¶ 78} We agree that "a child should not have to endure the inevitable to its great detriment and harm in order to give the [parent] an opportunity to prove [his] suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject of the decision not the expected or anticipated behavior of unsuitability or unfitness of the [father]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm." In re East (1972), 32 Ohio Misc. 65, 69.
 {¶ 79} In In re M.H., supra, this court stated, "[n]oncompliance with a parent's case plan is a ground for termination of parental rights." Id. at § 34, citing In re Brofford (1992), 83 Ohio App.3d 869, 878. The record shows that father was noncompliant with his case plans.
 {¶ 80} Therefore, as to the second prong of the analysis, we determine that there was sufficient evidence to clearly and convincingly show that D.R. could not be placed with either parent in a reasonable time or should not be placed with either parent.
 {¶ 81} To summarize, we conclude that sufficient evidence was presented for the trial court to find under a clear and convincing standard, that it was in D.R.'s best interest to be placed in the permanent custody of CCDCFS, and that he could not be placed with either parent in a reasonable time or should not be placed with either parent. *Page 21 
 {¶ 82} Accordingly, father's first and second assignments of error lack merit.
 {¶ 83} In his third assignment of error, father argues that he was denied effective assistance of counsel when his trial counsel stipulated to the amended complaint, which included several factors that supported the granting of permanent custody.
 {¶ 84} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Bradley (1989),42 Ohio St.3d 136, 141-142, citing Strickland v. Washington (1984),466 U.S. 668, 687. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment."Strickland at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, supra, at 143.
 {¶ 85} Thus, if we determine that trial counsel's performance was deficient then we must decide if father would have likely been successful if he had not stipulated to the amended complaint. If so, his counsel would be ineffective for making the stipulation. The amended complaint stated:
 {¶ 86} "* * * *Page 22 
 {¶ 87} "8. [F]ather lacks appropriate housing in which to provide care for his child.
 {¶ 88} "9. [F]ather is the father of the child's sibling who is currently in Permanent Custody of CCDCFS, * * *.
 {¶ 89} "10. [F]ather has a substance abuse problem, specifically cocaine, which prevents him from providing appropriate care and supervision of the child.
 {¶ 90} "11. [F]ather was referred to drug assessment but has failed to comply and continues to test positive for cocaine.
 {¶ 91} "12. [F]ather was referred to anger management and domestic violence courses but has failed to benefit from the services."
 {¶ 92} At the hearing, the trial court questioned father on an individual basis as to his understanding of the stipulations and the voluntary nature of his agreement to the stipulations. The court asked father:
 {¶ 93} Q. "Do you understand that by entering an admission to this complaint that you're giving up certain rights? You're giving up the right to have a hearing on this at trial, a right to subpoena people and cross-examine any witnesses that would be put on. The right to remain silent, and the right to make [CCDCFS] prove their case by the required degree of proof. Do you understand that?
 {¶ 94} "Yes.
 {¶ 95} "* * * *Page 23 
 {¶ 96} Q. "You received a copy of [the amended complaint]? Do you have one in front of you?
 {¶ 97} "Yes, your Honor.
 {¶ 98} Q. "And specifically it's amended No. * * * 8, 9, 10, 11, [and] 12, * * *. You've had an opportunity to review those?
 {¶ 99} "Yes."
 {¶ 100}
 {¶ 101} Q. "I'll ask you with respect to the amended complaint-
 {¶ 102}
 {¶ 103} Q. "* * * you admit those violations-or excuse me, the allegations contained in that complaint?
 {¶ 104} "Yes."
 {¶ 105} We conclude that there is nothing in the record to demonstrate that father did not, in conjunction with his attorney, decide to enter into the stipulation voluntarily and intelligently.
 {¶ 106} Further, "the decision to enter into a stipulation, including the stipulation of fact, is a tactical decision." In re J.H. (Aug. 28, 1998), 6th Dist. No. L-97-1461, 1998 Ohio App. LEXIS 3923, at 14, citingState v. Green (1993), 66 Ohio St.3d 141, 148. "Absent a showing that counsel failed to research the facts or the law, or that he was ignorant of a crucial defense when he or she made a tactical *Page 24 
choice, a reviewing court will defer to counsel's judgment in the matter." Id., citing State v. Clayton (1980), 62 Ohio St.2d 45, 49. We find no such showing here.
 {¶ 107} Nevertheless, assuming arguendo, that the stipulations were
improper, father has failed to demonstrate that his right to a fair trial was prejudicially affected because as we previously explained, CCDCFS clearly and convincingly proved the allegations in the complaint.
 {¶ 108} Thus, we conclude that defense counsel's stipulations to the amended complaint were not deficient and furthermore, did not prejudice father so as to deprive him of a fair trial.
 {¶ 109} Therefore, father's third assignment of error is overruled.
 {¶ 110} The judgment of the Juvenile Division of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY JANE BOYLE, JUDGE *Page 25 
KENNETH A. ROCCO, P.J., and MELODY J. STEWART, J., CONCUR
[1] The state entered a certified copy of the medical records as exhibit one.
[2] The state entered a certified copy of the journal entry as exhibit two.
[3] The state entered the docket as exhibit three. The docket stated that father was convicted of disorderly conduct in violation of MC 605.03.
[4] Under R.C. 2151.414(D), "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from the home."
[5] Father contends that under R.C. 2151.414(E)(9), CCDCFS failed to prove that he placed D.R. in substantial risk two or more times due to his drug use and that he refused treatment two or more times. However, the juvenile court did not make a finding pursuant to that factor. Further, the trial court only needs to find one factor under R.C.2151.414(E) to support its holding. *Page 1